BUNN LAKE PROPERTY OWNER'S ASSOCIATION, INC., PLAINTIFF V.
S. CHRIS SETZER, DEFENDANT

No. COA01-23

(Filed 19 March 2002)

## 1. Real Property— restrictive covenants—encroachment—location of lake property line—summary judgment

The trial court did not err in an action to enforce a subdivision's restrictive covenants by granting partial summary judgment in favor of plaintiff homeowner's association regarding defendant's encroachment on the pertinent lake even though defendant alleges the location of the property line is still at issue, because: (1) defendant has structures on the lake that are not in compliance with plaintiff's restrictive covenants and bylaws, and there is no dispute that these structures extend over the waters of the lake; and (2) the trial court's determination is unaffected by the exact location of the waterline.

## 2. Real Property— restrictive covenants—encroachment—equitable estoppel

The trial court did not err in an action to enforce a subdivision's restrictive covenants by granting partial summary judgment in favor of plaintiff homeowner's association on the issue of encroachment on the pertinent lake even though defendant presented the affirmative defense of equitable estoppel based on his reliance upon false representations by his neighbors, including some members of plaintiff's board of directors, that defendant had permission to proceed with his construction because: (1) none of these conversations purport to be a formal meeting or decision by plaintiff's board, which is the only body authorized to grant approval of a homeowner's lake construction project; (2) defendant was on plaintiff's board, attended board meetings at which he discussed the bylaws and covenants regarding waterfront structures, and defendant had analyzed these restrictions in the hope that his construction might fall within a

"loophole" of the covenants; (3) defendant's letters and other documents establish his intention to proceed with building with or without plaintiff's permission; and (4) defendant was instructed to stop his lakefront construction but continued in defiance of plaintiff's bylaws, and thus, did not act in reliance upon a false representation that it was approved.

**3. Judgments— consent judgment—failure to object—failure to sign**

The trial court did not err in an action to enforce a subdivision's restrictive covenants by entering a consent judgment, because: (1) defendant did not object to the entry of judgment, file a postjudgment motion to amend or set aside judgment, or present a timely request to the trial court; (2) even though defendant did not sign the judgment, the validity of the judgment depends upon the parties' consent to its terms when recited and explained in court; (3) the findings of fact in the consent order are supported by competent evidence; (4) contrary to defendant's assertions, the agreement does not provide for defendant's approval of a new survey; (5) although the agreement does not explicitly state that defendant's general release of his claims against plaintiff is limited to claims asserted in the present action, defendant has no other claims; and (6) the trial court's suggestion that the letter of agreement should be attached to the consent judgment was not a formal requirement, and defendant has not shown any prejudice attributable to the agreement's not being stapled to the judgment.

Appeal by defendant from judgments entered 24 March 2000 by Judge Wade Barber, and 18 September 2000 by Judge Narley L. Cashwell, both orders entered in Franklin County Superior Court. Heard in the Court of Appeals 17 October 2001.

*J. Michael Weeks, for plaintiff-appellee.*

*Gay, Stroud & Jackson, L.L.P., by Darren G. Jackson and Andy W. Gay, for defendant-appellant.*

*Bailey & Dixon, L.L.P., by David S. Wisz, for counterclaim defendant.*

BIGGS, Judge.

This appeal arises from a dispute over lakefront structures that S. Chris Setzer (defendant) erected on Bunn Lake, in Wake and Franklin

Counties, in North Carolina. For the reasons that follow, we affirm the trial court.

The facts, as established by the record, are as follows: Bunn Lake is a man-made body of water created in the 1960's. In 1966, Bunn Lake Estates, Inc., the owner of the land that includes Bunn Lake, subdivided the property to create Bunn Lake Subdivision. The Bunn Lake Property Owners Association (plaintiff), is the homeowners' association for Bunn Lake Subdivision. In 1978, plaintiff adopted its bylaws, and recorded restrictive covenants. These covenants and bylaws address the type of structures that Bunn Lake residents are permitted to build on the lake. The relevant restrictions are summarized as follows:

1. Lakefront homeowners may have one waterfront boating or fishing pier, whose dimensions over the water are not to exceed 25 feet by 15 feet;

2. Subdivision homeowners are required to get plaintiff's prior approval before constructing a waterfront dock or pier;

3. Plaintiff's Lake Committee evaluates homeowners' requests for permission to construct a pier or dock, and reports to plaintiff's board of directors whether the proposed structure complies with the restrictive covenants and bylaws;

4. Plaintiff's board of directors is the only group authorized under the bylaws or covenants to grant approval of homeowners' construction projects.

In 1992, defendant acquired a lakefront lot in Bunn Lake Subdivision, subject to plaintiff's bylaws and restrictive covenants. At that time, defendant's property already had a concrete walkway and a partially enclosed boat house extending over Bunn Lake. During the following five years, defendant constructed a screen house, a wood deck, a stone planter, a floating dock, and expanded the boat house and dock, without obtaining plaintiff's permission.

In October 1997, defendant began further expansion of his lakefront structures, including: replacement of the existing sea wall by a new wall; extension of his pier further into the lake bed; enlarging the dimensions of his boat house; and adding a new screen porch on the existing dock. Defendant was told by a representative of plaintiff's Lake Committee to stop construction until he had obtained approval from plaintiff's board of directors. Defendant refused to stop con-

struction, which was followed by several months of controversy in Bunn Lake Subdivision over defendant's waterfront construction projects. Plaintiff's board of directors held several meetings, and took the following actions:

1. On 18 November 1997 plaintiff's board of directors, of which defendant was a member, held a meeting which defendant attended. They discussed the covenants and bylaws requiring all homeowners to get prior approval for dock expansions.

2. On 25 November 1997 plaintiff's Lake Committee requested in writing that defendant submit his construction plans for plaintiff's review and possible approval.

3. Defendant responded to plaintiff's request on 27 November 1997 with a drawing of his proposed building project, and a letter arguing that his project was "exempt" from the requirements of Bunn Lake Subdivision bylaws.

4. On 17 December 1997, plaintiff's board of directors met, and the Lake Committee representative formally recommended that the board reject defendant's request. The board voted to conditionally approve defendant's plans, provided that defendant's construction plans subsequently received approval by the subdivision's entire membership.

5. Plaintiff's board met on 18 January 1998, and was informed by the board's attorney that it lacked the authority to approve a project that did not conform to plaintiff's bylaws and restrictive covenants, regardless of the results of the proposed neighborhood referendum.

6. The board voted not to approve defendant's construction, and decided that if defendant did not stop his waterfront construction, plaintiff would institute legal action.

On 18 February 1998, plaintiff filed suit against defendant, alleging that defendant's piers and other structures were in violation of plaintiff's bylaws and encroached on plaintiff's property. The complaint also named defendant's wife as a party; however, the suit against her was subsequently dismissed because she was not an owner of the property. Defendant's answer and counterclaim, filed in April, 1998, raised the defenses of equitable estoppel, waiver and selective enforcement, laches, and the statute of limitations. Defendant also filed a counterclaim for misrepresentation, slander of

title, and an action to compel plaintiff to enforce its bylaws uniformly. On 22 April 1999, plaintiff's claims against defendant's wife, as well as defendant's claim of misrepresentation, were dismissed by Judge James Spencer, Jr. On 19 May 1999, plaintiff filed a motion for summary judgment, which was followed by defendant's summary judgment motion filed on 5 November 1999.

On 24 March 2000, Judge Wade Barber issued an order granting partial summary judgment to plaintiff. The trial court found that the only genuine question of material fact was the location of the boundary line between plaintiff's lake bed and defendant's property line. The trial court concluded that there were no other genuine issues of material fact, and that plaintiff was entitled as a matter of law to summary judgment on "all the remaining issues in this action." Accordingly, the trial court denied defendant's motion for summary judgment, and granted plaintiff's summary judgment motion with respect to all of defendant's affirmative defenses, and on the issue of defendant's encroachment on plaintiff's lake bed. The significant conclusions of law in the summary judgment order are summarized as follows:

1. Defendant has an easement appurtenant to his ownership of a waterfront lot in Bunn Lake Subdivision, allowing him to have one boat or fishing pier, not over 375 square feet.

2. Structures erected by defendant or by his predecessors such as a sea wall, boat house, concrete boat ramp, and screen porch, are not within the scope of the easement, and are an encroachment on plaintiff's lake bed.

3. Structures erected by defendant or by his predecessors in excess of 375 square feet are an encroachment upon plaintiff's lake bed.

4. Plaintiff did not grant approval for defendant to expand his waterfront structures.

5. Defendant knew that approval for construction could only come from a formal decision of plaintiff's board of directors, and that individual officers have no authority to grant approval for construction.

6. Defendant did not rely to his detriment upon statements by individual board members suggesting that he had approval because (a) he knew that approval could come only from a formal

vote by the board, (b) he stated that he didn't need permission because his projects would fall within a "loophole," and (c) he stated that he would continue his project with or without plaintiff's approval.

7. Plaintiff's decision not to grant approval of defendant's lakefront construction was not arbitrary or capricious.

The trial court ordered the case set for trial on the issue of the location of the property line between plaintiff's lake bed and defendant's property; ordered defendant restrained from further encroachment; and ordered that within 30 days of the determination of the location of the property line, defendant was to remove all encroaching structures except for the single fishing pier allowed under the restrictive covenants.

On 17 April 2000, when the case was called for trial, the parties informed the court that they had reached an agreement that plaintiff would sell defendant the area of his encroachment, and that defendant would keep one boathouse and dock, and would demolish his other waterfront structures. The terms of their agreement were read aloud into the record, and upon inquiry by the trial court, the parties indicated their consent to its terms. On 18 September 2000 Judge Narley Cashwell entered a final judgment in the case. Defendant has appealed from the order awarding partial summary judgment for plaintiff, and from the final judgment entered in this case.

I.

[1] Defendant argues first that the trial court erred in its entry of summary judgment on the issues of his encroachment on Bunn Lake, and on his affirmative defense of equitable estoppel.

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (1999). "An issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action." *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972). With regard to an affirmative defense, summary judgment is appropriate if the movant establishes that the nonmovant cannot prevail on at least one of the elements of his af-

BUNN LAKE PROP. OWNER'S ASS'N, INC. v. SETZER

[149 N.C. App. 289 (2002)]

firmative defense. *Development Corp. v. James*, 300 N.C. 631, 268 S.E.2d 205 (1980).

"[T]he party moving for summary judgment ultimately has the burden of establishing the lack of any triable issue of fact." *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985) (citation omitted). Furthermore, "the evidence presented by the parties must be viewed in the light most favorable to the non-movant." *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998).

Defendant argues that there are genuine issues of fact as to trespass and encroachment. He contends that the trial court's findings of fact are inconsistent with its grant of summary judgment. The relevant findings are summarized as follows:

1. Plaintiff owns the lake bed of Bunn Lake; defendant owns a lot in Bunn Lake Estates subdivision, which he obtained in 1992, and which is subject to plaintiff's bylaws and restrictive covenants.

2. The bylaws and covenants confer an easement on homeowners, allowing construction of one pier or dock of no more than 375 square feet, and requiring plaintiff's prior approval for waterfront construction.

3. Defendant and his predecessors constructed waterfront structures that included a lakeside boat house, deck, a concrete boat ramp, concrete sea wall, a stone planter and stone wall, a floating platform, and a screen porch; these structures exceed 1500 square feet.

4. Defendant was a member of plaintiff's board of directors, had discussed the restrictive covenants concerning waterfront construction with his neighbors, and had told them that his construction fell within a "loophole" to plaintiff's bylaws and covenants.

5. Defendant did not obtain plaintiff's approval for his projects; when plaintiff told defendant to stop his construction, defendant expressed his intention to proceed with construction whether or not plaintiff granted approval, and continued construction.

6. The sea wall, deck, stone wall, and other lakeside structures that defendant erected may have altered the high water mark, requiring the substitution of a metes and bounds description.

Defendant argues that the trial court's finding that there was an issue of the location of the property line precluded its entry of summary judgment. He contends that the exact property line must be established before any determination can be made regarding whether he has encroached on plaintiff's lake. We disagree.

As the owner of the lake bed, plaintiff also owns the water above the bed, and may restrict the use of the land and water, including restrictions on structures built on the lake bed. *Development Corp.*, 300 N.C. 631, 268 S.E.2d 205. If an easement is granted, the user of the easement may neither change the easement's purpose nor expand the easement's dimensions. *Moore v. Leveris*, 128 N.C. App. 276, 495 S.E.2d 153 (1998) (easement to use neighborhood road would not allow defendant to place sewer line under road); *Swaim v. Simpson*, 120 N.C. App. 863, 463 S.E.2d 785 (1995), *aff'd*, 343 N.C. 298, 469 S.E.2d 553 (1996) (where plaintiff was granted easement for ingress and egress to tract, trial court errs by construing easement to permit installation of utility pipes, thus enlarging scope of easement); *Sheftel v. Lebel*, 44 Mass. App. Ct. 175, 689 N.E. 2d 500 (1998) (easement extending to high water line of tidal area does not encompass extension to low water line, or permit defendant to construct pier to low water line).

In the instant case, plaintiff's restrictive covenants and bylaws grant defendant an easement over the lake bed for the restricted purpose of having one fishing pier no larger than 375 square feet. The uncontradicted evidence establishes that defendant has structures on Bunn Lake that are not restricted to a single fishing pier, and whose dimensions exceed 1500 square feet. There is no dispute that these structures extend over the waters of Bunn Lake. The trial court's findings in this regard are the basis of its conclusion that defendant had trespassed and encroached on Bunn Lake. Thus, the trial court's determination that the plaintiff was entitled to summary judgment on the issue of defendant's trespass is based upon facts and conclusions that are unaffected by the exact location of the waterline. As the plaintiff has noted, even if "the boundary line was later established by the jury [to be located] as contended by the Defendant, the Defendant would still be encroaching upon Plaintiff's land[.]" We conclude there was no genuine issue of material fact regarding whether defendant had encroached upon plaintiff's lake bed.

[2] Defendant next argues, however, that assuming *arguendo*, that there was no issue as to defendant's encroachment, the trial court still could not grant summary judgment because defendant success-

fully raised the affirmative defense of equitable estoppel. He contends that he produced "ample evidence" of the existence of this defense. We disagree.

Equitable estoppel is a common law doctrine that "is designed to aid the law in the administration of justice when without its intervention injustice would result." *Thompson v. Soles*, 299 N.C. 484, 486, 263 S.E.2d 599, 602 (1980). The elements of equitable estoppel are (1) speech, conduct, or actions that induce another to believe certain facts exist, that are not in fact true; (2) a lack of knowledge and means of obtaining knowledge as to the true facts in question; and (3) detrimental reliance by the party claiming this defense upon the representations of the party making the false representations. *Keech v. Hendricks*, 141 N.C. App. 649, 540 S.E.2d 71 (2000). The doctrine prevents a party from "asserting a right that 'he otherwise would have had against another' " if his own conduct renders this unfair. *LSB Fin. Servs, Inc. v. Harrison*, 144 N.C. App. 542, 548, 548 S.E.2d 574, 579 (2001) (quoting *In Re Varat Enterprises, Inc.*, 81 F.3d 1310, 1317 (4th Cir. 1996)). Equitable estoppel is established by evidence that " 'an individual . . . induces another to believe that certain facts exist and that other person rightfully relies on those facts to his detriment.' " *Bowers v. City of Thomasville*, 143 N.C. App. 291, 298, 547 S.E.2d 68, 73, (quoting *Miller v. Talton*, 112 N.C. App. 484, 488, 435 S.E.2d 793 (1993)), *disc. review denied*, 353 N.C. 723, 550 S.E.2d 769 (2001).

In the instant case, defendant contends that he relied to his detriment upon false representations by his neighbors, including some members of plaintiff's board of directors, that he had permission to proceed with his construction. In support of his position, defendant has submitted his letters to various neighbors, and synopses of neighborhood conversations concerning defendant's construction plans. These conversations included telephone calls and informal neighborhood visits, in which neighbors either repeated what others were reputed to have said or done, or expressed their own views.

Although the participants in these interactions may have included officers of plaintiff's board of directors, none of these conversations purport to be a formal meeting or decision by plaintiff's board, which is the only body authorized to grant approval to a homeowner's lake construction project. The record establishes unequivocally that defendant was on plaintiff's board, attended board meetings at which he discussed the bylaws and covenants regarding waterfront struc-

tures, and that defendant had analyzed these restrictions in the hope that his construction might fall within a "loophole" of the covenants. We conclude that there is no genuine issue of material fact regarding defendant's knowledge of the relevant facts. Further, defendant's letters and other documents also establish his intention to proceed with building, with or without plaintiff's permission. Defendant was instructed to stop his lakefront construction, but continued in defiance of plaintiff's bylaws, and thus did not act in reliance upon a false representation that it was approved. *Development Corp.*, 300 N.C. 631, 268 S.E.2d 205 (equitable estoppel inapplicable where lake owner tells defendant to cease construction of pier, but defendant disregards plaintiff and continues building). We conclude that the evidence establishes that defendant's actions were not taken in reliance upon plaintiff's representations, and that there is no genuine issue of any material fact that might support defendant's claim of detrimental reliance. For the reasons outlined above, we hold that the trial court did not err in its grant of summary judgment on the issues of encroachment and equitable estoppel. Accordingly these assignments of error are overruled.

## II.

**[3]** Defendant next argues that the trial court erred by entering the consent judgment. He contends that the judgment was not signed, does not accurately reflect the parties' agreement, and that it is otherwise invalid. Plaintiff, on the other hand, argues that we should not reach the merits of defendant's claims because defendant has not preserved these issues for appellate review, as required by N.C.R. App. P. 10(b)(1) ("to preserve a question for appellate review, a party must [present] the trial court [with] a timely request, objection or motion"). In the instant case, defendant did not object to the entry of judgment, file a post-judgment motion to amend or set aside judgment, or present a timely request to the trial court. However, in the interests of justice, and pursuant to our authority under N.C.R. App. P. Rule 2, this Court will consider defendant's contentions on the merits.

The party who challenges a consent judgment bears the burden of proving it is invalid. *Milner v. Littlejohn*, 126 N.C. App. 184, 484 S.E.2d 453, *disc. review denied*, 347 N.C. 268, 493 S.E.2d 458 (1997). To prevail on this issue, defendant must demonstrate that the challenged aspects of the final consent judgment, if error, were prejudicial. *HAJMM Co. v. House of Raeford Farms*, 328 N.C. 578, 403 S.E.2d 483 (1991) (citation omitted).

Defendant first contends that the entry of a final consent judgment is invalid because he did not sign it. However, the validity of a consent judgment depends upon the parties' consent to its terms when recited and explained in court, rather than by the parties' signature at the time the judgment is reduced to writing and signed by the trial court. *Chance v. Henderson*, 134 N.C. App. 657, 518 S.E.2d 780 (1999).

In the instant case, the transcript establishes that the defendant was asked several times by the court if he agreed to the provisions of the parties' agreement, and that defendant through counsel assented to the judgment. Defendant further agreed to the procedure proposed by the trial court, that a judgment be prepared for his signature. We conclude that the consent judgment was not invalidated by the fact that defendant did not sign it.

Defendant next argues that the consent judgment does not, "when viewed in its entirety," accurately reflect the parties' agreement. We disagree.

Defendant first assigns error to the inclusion in the judgment of Judge Barber's findings of fact from the partial summary judgment order entered in this case, contending that the addition of these findings of fact was "unnecessary and prejudicial."

"[A] trial court's findings of fact are deemed conclusive on appeal if they are supported by competent evidence, regardless of whether there is evidence which could have supported findings to the contrary." *Tepper v. Hoch*, 140 N.C. App. 354, 361, fn. 5, 536 S.E.2d 654, 659, fn. 5 (2000) (citation omitted). Findings of fact and conclusions of law are not required in a summary judgment order. *Bland v. Branch Banking & Tr.*, 143 N.C. App. 282, 547 S.E.2d 62 (2001). However, findings of fact "do not render a summary judgment void or voidable[.]" *Mosley v. Finance Co.*, 36 N.C. App. 109, 111, 243 S.E.2d 145, 147, *disc. review denied*, 295 N.C. 467, 246 S.E.2d 9 (1978) (citations omitted). Further, defendant has not identified which findings of fact he contends are unsupported by competent evidence. We conclude that the findings of fact in the consent order are supported by competent evidence, and should be upheld. Accordingly, this assignment of error is overruled.

Defendant next argues that the consent agreement provided for his approval of a new survey, separate from the one referenced in the terms of the agreement itself. The transcript of the hear-

ing included no mention of an additional survey, and provides no support for defendant's contention. This assignment of error is overruled.

Defendant also alleges that the consent agreement is void because it does not explicitly state that his general release of his claims against plaintiff is limited to claims asserted in the present action. As defendant has no claims against plaintiff other than those arising from this action, this omission has no effect upon the agreement, and could not prejudice defendant. This assignment of error is overruled.

Defendant finally contends that the judgment is invalid because it was not physically attached to the letter of agreement upon which the recitals in open court were based. At the conclusion of the hearing, the trial court stated in relevant part:

> All right, it sounds like a fair and reasonable settlement . . . I will make the following suggestion to counsel, that you prepare a consent judgment[,] . . . [that will] incorporate the document that Mr. Weeks read in court, [and] that a copy be attached to the judgment[.]

The trial court's "suggestion" was not a formal requirement, and defendant has shown no prejudice attributable to the agreement's not being stapled to the judgment.

For the reasons discussed above, we conclude that the consent judgment reflects in all significant aspects the agreement of the parties, and that the trial court did not err in its entry of judgment. We further conclude that the trial court properly entered the partial summary judgment order. Accordingly, we affirm the order of partial summary judgment, and the consent judgment entered in this case.

Affirmed.

Judges McGEE and TIMMONS-GOODSON concur.