693 S.E.2d 374 (2010)
STRATEGIC OUTSOURCING, INC., Plaintiff,
v.
AG WAREHOUSE & PACKING, INC., Defendant.
No. COA09-668.
Court of Appeals of North Carolina.
June 1, 2010.
*375 Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene, Raleigh, Tobias S. Hampson, and Edward Eldred; and Howard, Stallings, From & Hutson, P.A., by John N. Hutson, Jr., Raleigh, and Russell W. Johnson, for defendant.
*376 Robinson Elliott & Smith, by William C. Robinson, Charlotte, and Katherine A. Tenfelde, for plaintiff.
ELMORE, Judge.
Strategic Outsourcing, Inc. (plaintiff or SOI), is a professional employer organization (PEO), which is in the business of forming "co-employment" relationships with companies such as AG Warehouse & Packing, Inc. (defendant or AG). A contract known as a lease agreement is entered into between the PEO and the company where, depending on the contract's language, the PEO may administer personnel overhead such as payroll services, employment benefits, unemployment claims services, and workers compensation insurance for the client company. The co-employment relationship allows the client company to receive benefits of products like employee benefits and insurance while taking advantage of greater economies of scale and enjoying fewer administrative requirements.
On 1 November 2002, plaintiff entered into such a lease agreement with defendant (Service Agreement). The Service Agreement contained the following terms, among others:
1. Plaintiff agreed to "[o]btain legally required workers' compensation coverage" "with respect to Assigned Employees."
2. Assigned Employees are defined in the service agreement as "employees performing services for Client for whom SOI processes payroll and Client submits timely, accurate and complete payment and information, while [the] Agreement is in effect."
3. "No employee will be Assigned while performing duties for which SOI has not agreed in writing to provide legally required worker injury coverage."
4. "Client is solely responsible for all matters, including, without limitation, worker injuries and wages, that occur while an employee is not Assigned."
Pursuant to the Service Agreement, Plaintiff secured a workers' compensation policy from insurer Twin Cities. The policy provides first dollar coverage to the claimant, meaning that, from the injured employee's perspective, the insurance carrier Twin Cities will directly pay claims beginning with dollar number one. The policy, however, has a $500,000.00 deductible; as such, plaintiff is responsible for reimbursing Twin Cities for claims up to that amount. The Service Agreement allows plaintiff to then seek recourse against AG (1) in all circumstances outlined in the indemnity clause and/or (2) if AG breaches the agreement.
AG operates an agricultural packing warehouse in Texas. Mr. Garcia was employed by AG to remove rotten fruit delivered to AG's warehouse before it was packed and shipped out. The fruit deemed unacceptable was shipped out by L & M Companies (L & M), an independent third party located on the same property as AG. Mr. Garcia was submitted to plaintiff as an Assigned Employee under the Service Agreement. Under the Agreement, Mr. Garcia would only be an Assigned Employee when his work was limited to the removal of rotten fruit and actions related to that endeavor.
While working in AG's warehouse, Mr. Garcia was supervised by Mr. Cantu. In addition to his supervisor responsibilities, Mr. Cantu operated a personal side business by contracting with L & M to provide disposal of unacceptable fruit utilizing a dump truck he owned. On 19 November 2002, Mr. Cantu asked Mr. Garcia to repair the hydraulic system of his truck in exchange for cash compensation. To work on the system, Mr. Garcia climbed under the bed while the hydraulic system was engaged and the bed was in its upright, "dumping" position. While Mr. Garcia was operating on the hydraulic system, the system disengaged causing the bed to collapse, crushing Mr. Garcia to death.
OSHA conducted an investigation during which time AG made it clear that it had no relationship to the dump truck side business and that it was not "standard operating procedure for employees to work on the dump truck." AG representatives told OSHA that "the truck was owned by somebody else. . . . We are not responsible for other people's trucks and did not know about maintenance work on the side." OSHA cited AG for violations, but the citations were eventually *377 withdrawn after a settlement agreement was reached.
On 20 September 2007, plaintiff filed a complaint against defendant alleging breach of contract and contractual indemnification. In an order and judgment entered on 15 September 2008, the Honorable Jesse B. Caldwell III granted plaintiff's motion for summary judgment and denied AG's motion for summary judgment. AG filed notice of appeal on both judgments by the trial court.
AG claims that the trial court erred in granting plaintiff's motion for summary judgment because plaintiff did not meet his evidentiary burden. When determining whether a summary judgment was properly granted by the trial court, this Court reviews the trial court's ruling de novo. Summey v. Barker, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." Id. In considering a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. In re Will of Jones, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008). With this burden upon plaintiff in mind, we find that plaintiff did meet its evidentiary burden, and the trial court correctly granted plaintiff's summary judgment motion.
The Service Agreement is a business contract where each party bears certain bargained-for risks and duties. Thus, the terms of the contract are what should guide this Court in reaching its decision today. "As in the construction of any contract, the court's primary purpose in construing a contract of indemnity is to ascertain and give effect to the intention of the parties, and the ordinary rules of construction apply." Dixie Container Corp. v. Dale, 273 N.C. 624, 627, 160 S.E.2d 708, 711 (1968) (citations omitted). "Where the language of a contract is clear and unambiguous, the court is obligated to interpret the contract as written, and the court cannot look beyond the terms to see what the intentions of the parties might have been in making the agreement." Renfro v. Meacham, 50 N.C.App. 491, 496, 274 S.E.2d 377, 379 (1981).
The Service Agreement's indemnification clause provides in pertinent part:
b. Client [AG Warehouse] will immediately and unconditionally save, hold harmless, and indemnify SOI . . . for any breach by Client of this Agreement, any wrongful act committed by or against an Assigned Employee, all matters relating to Client's business in connection with persons who are not Assigned Employees at the time the matter arises . . .
The language of the contract clearly states that, if Mr. Garcia was not acting as an Assigned Employee when an incident occurs, AG would be required to indemnify the Plaintiff. Thus, it is crucial to determine if Mr. Garcia was in fact acting as an assigned employee when the accident occurred.
Again, the Service Agreement defines Assigned Employees as "employees performing services for [AG Warehouse] for whom SOI processes payroll and Client submits timely, accurate and complete payment and information, while this Agreement is in effect." It also states that "[n]o employee will be Assigned while performing duties for which SOI has not agreed in writing to provide legally required worker injury coverage." The contract, then, clearly suggests that Mr. Garcia's status as an Assigned Employee could shift to non-Assigned based on the nature of the services he was engaged in at a given time.
AG argues that, because the work on the dump truck was at the behest of Mr. Garcia's supervisor, he was undoubtedly "performing services" for AG by performing the maintenance upon "an integral part of the operation" at the facility. AG's argument ignores the words of the contract which acknowledge that other activities may be performed by employees but, unless plaintiff provided expressed written authorization for such activities, those employees were not acting as Assigned Employees, but rather as non-Assigned employees. As a result, since plaintiff agreed only to Mr. Garcia being an Assigned Employee for purposes of culling fruit for AG Warehouse, it is clear that the *378 maintenance of a truck not owned or operated by plaintiff falls outside of activities reasonably related to his assignment to plaintiff. Thus, even though Mr. Garcia was "on the clock" for AG when the incident occurred, he was at that time acting as a mechanic, a task far removed from his normal task of removing rotten fruit. As a result, Mr. Garcia was no longer acting as an Assigned Employee as contemplated by the parties.
AG also argues that summary judgment was improper because plaintiff did not meet its burden of proof on AG's affirmative defense of collateral estoppel. Per AG's argument, plaintiff was collaterally estopped from arguing Mr. Garcia was not an Assigned Employee at the time of his death because that legal question was resolved in a prior proceeding with Twin Cities. AG argues that the plaintiff failed to reach its burden of establishing that AG could not prevail on at least one element of the defense of collateral estoppel. See Bunn Lake Prop. Owner's Ass'n, Inc. v. Setzer, 149 N.C.App. 289, 294-95, 560 S.E.2d 576, 580 (2002).
To successfully assert collateral estoppel as a bar to a plaintiff's claims, a defendant must: (1) show that the earlier suit resulted in a final judgment on the merits; (2) that the issue in question is identical to an issue actually litigated and necessary to the judgment; and (3) that both defendant and plaintiff were either parties to the earlier suit or were in privity with those parties. Collateral estoppel only precludes the subsequent adjudication of a previously determined, identical issue. Hales v. N.C. Insurance Guaranty Assn., 337 N.C. 329, 334, 445 S.E.2d 590, 594 (1994). It is clear from the record of the Twin Cities proceeding that the issue in question during that proceeding was not "identical" to the issues in the case now before the Court.
The Twin Cities proceeding was an administrative hearing organized to determine what, if any, death benefits were available to the claimant's beneficiaries under the Texas Worker Compensation Act (TA). The TA has been construed by Texas courts to carry out the legislature's policy of liberally construing the act in order to provide compensation to the claimants and their dependents. Texas Workers' Compensation Com'n v. Patient Advocates of Texas, 136 S.W.3d 643,652 (Tex.2004). The issue in that hearing was whether Mr. Garcia suffered a "compensable injury on November 19, 2002, resulting in his death[.]" A compensable injury is defined under the TA as "an injury that arises out of and in the course and scope of employment for which compensation is payable. . . ." Tex. Lab.Code § 401.011(10) (2004). The phrase "course and scope of employment" means:
an activity of any kind of character that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer. The term includes an activity conducted on the premises of the employer or at other locations . . .
Tex. Lab.Code § 401.011(12) (2004).
Clearly, the Commission's definition of "course and scope of employment" is much broader than the definition of Assigned Employee under the Service Agreement. Given that the Commission was applying different law from a different state for a different purpose, this Court is hard pressed to conclude that the issue addressed in this prior suit is "identical" to the issue before the court in this current proceeding. As a result, the trial court properly dismissed AG's motion for summary judgment.
Affirmed.
Judges BRYANT and STROUD concur.