KANWALJOT G. CHANCE, Plaintiff v. DAVID JAMES HENDERSON, Defendant

No. COA98-889

(Filed 7 September 1999)

**1. Judgments— stipulated separation agreement—lack of consent—trial court reads agreement or evidence that parties understood**

In a case involving a stipulated agreement hearing addressing child support, child custody, visitation, alimony, property division, and attorney fees, the trial court did not err in failing to set aside an order as void for lack of consent because: (1) the trial court can read the agreement in open court; or (2) it has to be

**CHANCE v. HENDERSON**

[134 N.C. App. 657 (1999)]

reasonably apparent from the record that both parties either read or understood the stipulated terms. Although plaintiff's attorney rather than the trial court read the stipulated terms of settlement, the record reflects that both parties understood the stipulated terms because both answered affirmatively when the judge asked if the settlement as read by plaintiff's attorney was fair and equitable and fully reflected what had been agreed upon.

2. **Estoppel— equitable—stipulated separation agreement— lack of consent—ratification by subsequent actions**

Although defendant-husband attempted to withdraw his consent following a hearing but prior to entry of an order concerning a stipulated agreement addressing child support, child custody, visitation, alimony, property division, and attorney fees, the trial court did not err in failing to set aside the order as void for lack of consent because subsequent actions of defendant ratified and validated the order. Equitable estoppel precludes defendant from denying the validity of the order in light of: (1) his later efforts to modify, correct, and enforce stipulated terms of the order; (2) the fact he failed on two occasions to perfect appeals directed at the order; and (3) the fact he acquiesced in his counsel's reliance on the order to deter action by the Department of Social Services.

Appeal by defendant from order filed 20 March 1998 by Judge Susan E. Bray in Guilford County District Court. Heard in the Court of Appeals 18 March 1999.

*Morgenstern & Bonuomo, P.L.L.C., by Barbara R. Morgenstern, for plaintiff-appellee.*

*Donna Ambler Davis, P.C., by Donna Ambler Davis, for defendant-appellant.*

JOHN, Judge.

Defendant appeals the trial court's order denying his motion pursuant to N.C.G.S. § 1A-1, Rule 60(b)(4) (1990) (Rule 60). We hold the trial court did not err.

Relevant facts and procedural history include the following: Plaintiff and defendant married in 1975 and separated 7 March 1994, entering into a separation agreement 23 March 1994. However, plaintiff subsequently filed suit 5 August 1994 to set aside the agreement,

the first action in an extensive period of litigation between the parties involving issues of child custody, support and visitation, and interim allocation of marital assets.

A 23 June 1995 hearing (the hearing) was scheduled on certain pending motions. At the hearing, defendant's counsel informed the trial judge, Judge Richard W. Stone (Judge Stone), that the parties had settled all pending issues. Both plaintiff and defendant were present and placed under oath, whereupon plaintiff's counsel read the settlement terms aloud in open court. The stipulated agreement addressed custody and visitation arrangements, alimony, child support, property division and attorney's fees, and provided a "mutual release of all other claims whatsoever pending between the parties." Judge Stone inquired into each of the proposed terms, mediated discussion between the parties on additional issues, and questioned plaintiff and defendant individually as to whether the recited settlement was their final and full agreement. Defendant replied, "Yes, sir." Defendant's counsel thereafter noted that both parties had been placed under oath and "stipulate[d] the formal order [wa]s going to be entry [sic] by consent of counsel."

In an affidavit filed in support of his Rule 60 motion, defendant indicated he had withdrawn consent to the stipulated agreement "within hours" of the hearing and instructed his attorney not to sign the order agreed upon in open court. However, on 11 July 1995, defendant's attorney sent correspondence to the Rockingham County Department of Social Services (the Department), relating the parties had reached a settlement on 23 June 1995 and agreed to dismiss all pending issues. The letter was copied to Judge Stone, plaintiff's counsel and defendant.

On 21 July 1995, plaintiff's counsel tendered a proposed order (the Order) to Judge Stone containing the terms agreed upon at the hearing. Defendant's counsel informed Judge Stone defendant had withdrawn his consent to the agreement, leaving counsel with no authority to acquiesce in the Order. Judge Stone instructed that the Order be modified to reflect it was prepared at his request and, following such modification, signed the Order 21 July 1995, *nunc pro tunc* 23 June 1995, without the signature of defendant's counsel. Defendant appealed 21 August 1995, but the appeal was dismissed 4 June 1996 for failure to be perfected in a timely manner. Defendant appealed the dismissal 7 June 1996, which appeal was subsequently dismissed on grounds identical to the earlier appeal.

Following entry of the Order, defendant advanced three motions for modification, correction or enforcement of the stipulated terms therein. On 29 September 1995, defendant filed a "Motion in the Cause to Modify a Prior Order," involving custody provisions of the Order. On 22 February 1996, defendant filed a "Motion to Correct Order," addressing visitation provisions of the Order, which Judge Stone granted 27 June 1996. Finally, on 20 June 1996, defendant filed a "Motion for Contempt," complaining plaintiff had not abided by terms of the Order.

On 24 June 1996, Judge Stone granted defendant's earlier motion for recusal and, on 25 September 1996, the parties consented to transfer of all pending matters to Guilford County. On 19 November 1997, defendant filed a motion pursuant to Rule 60(b)(4) (defendant's Motion) to set aside the Order as void for lack of consent. Defendant's Motion was heard and denied by Judge Susan E. Bray (Judge Bray) in a 20 March 1998 order (Judge Bray's order). Defendant appeals.

**[1]** In his first assignment of error, defendant challenges the Order as void, asserting the trial court failed to follow requirements set forth in *McIntosh v. McIntosh*, 74 N.C. App. 554, 328 S.E.2d 600 (1985), governing oral stipulations. This argument is unfounded.

*Inter alia*, Judge Bray's order contained the following findings of fact:

1. The plaintiff [and defendant] w[ere] present in Court and represented by [their] attorney[s].

2. . . . Plaintiff's attorney then read the terms of the settlement into the record. At the conclusion of the announcement of the terms of the stipulated settlement, the presiding Judge . . . inquired of each party as to whether he or she consented to the terms of the stipulation and agreed that the provisions were fair and equitable, to which inquiry both parties indicated their consent.

Judge Bray further concluded as a matter of law:

2. At the June 23, 1995, hearing, Judge Stone complied with the requirements of *McIntosh* . . . by having the terms of the stipulated settlement read into the record, and by then contemporaneously inquiring as to whether the parties understood the terms of the agreement and whether they agreed to abide by those

terms. Because both parties indicated they consented to and agreed to be bound by the terms . . . the consent order is a valid and binding order.

A consent judgment is a contract of the parties that may be sanctioned and entered upon the records of a court, *see Highway Commission v. Rowson*, 5 N.C. App. 629, 631, 169 S.E.2d 132, 134 (1969), but the "power of [a] court to sign a consent judgment depends upon the unqualified consent of the parties," *King v. King*, 225 N.C. 639, 641, 35 S.E.2d 893, 895 (1945). To set a consent judgment aside for lack of consent, there must be proper allegation and proof by the party attacking the judgment that consent was not given. *Nickels v. Nickels*, 51 N.C. App. 690, 693, 277 S.E.2d 577, 579, *disc. review denied*, 303 N.C. 545, 281 S.E.2d 392 (1981). While the trial court's findings of fact are conclusive on appeal when supported by competent evidence, its conclusions drawn from such facts are subject to appellate review. *Wynnewood Corp. v. Soderquist*, 27 N.C. App. 611, 615, 219 S.E.2d 787, 790 (1975). However, " 'a motion for relief under Rule 60(b) is addressed to the sound discretion of the trial court,' " *Burwell v. Wilkerson*, 30 N.C. App. 110, 112, 226 S.E.2d 220, 221 (1976) (quoting *Sink v. Easter*, 288 N.C. 183, 198, 217 S.E.2d 532, 541 (1975)), and a decision made thereon will not be disturbed on appeal absent an abuse of discretion, *Harrington v. Harrington*, 38 N.C. App. 610, 612, 248 S.E.2d 460, 461 (1978).

Defendant first claims Judge Stone violated *McIntosh* by allowing plaintiff's counsel to recite the stipulated terms rather than Judge Stone reading the agreement himself. Defendant is mistaken.

In pertinent part, *McIntosh* provides:

[i]f . . . oral stipulations are not reduced to writing, [duly executed and acknowledged,] it must affirmatively appear in the record that the trial court made contemporaneous inquiries of the parties at the time the stipulations were entered into. It should appear that the court read the terms of the stipulations to the parties; that the parties understood the legal effects of their agreement and the terms . . . and agreed to abide by those terms of their own free will.

*McIntosh*, 74 N.C. App. at 556, 328 S.E.2d at 602. However, our courts have not construed *McIntosh* rigidly "as requiring the *trial court* to read [the stipulations] to the parties," *Watson v. Watson*, 118 N.C. App. 534, 539, 455 S.E.2d 866, 868 (1995) (emphasis added), but

rather as providing either that the trial court read the agreement in open court *or* that it be reasonably apparent from the record that both parties either read or understood the stipulated terms, *see id.* at 538-39, 455 S.E.2d at 868 (although trial court did not read stipulated terms to parties in open court, subsequent order valid because both parties were present, represented by counsel, and indicated they either had read or understood the terms).

In the case *sub judice*, both parties were present, represented by counsel, and placed under oath prior to the recitation of the stipulated terms by plaintiff's attorney. During counsel's statement of the settlement, the parties discussed additional provisions and the trial court intervened to clarify new terms and conditions. The following exchange occurred thereafter:

COURT: Is this your stipulation and agreement, [plaintiff]?

. . . .

PLAINTIFF: Yes.

COURT: And the provisions for the distribution of marital property is fair and equitable?

PLAINTIFF: Yes, they are.

COURT: [Defendant], is this your agreement and stipulation as outlined by [plaintiff's attorney] and some subsequent conversation here that the court reporter got on the record?

DEFENDANT: Yes.

COURT: And the provisions for the distribution of property are equitable?

DEFENDANT: I don't think they're equitable, but I will not challenge it.

COURT: Well, equitable doesn't necessarily mean equal.

. . . .

[DEFENDANT'S COUNSEL]: It means fair.

DEFENDANT: Okay.

COURT: That's your full agreement?

DEFENDANT: Yes, sir.

Therefore, although the stipulated terms of settlement were read by plaintiff's attorney rather than the trial court, the record reflects that both parties answered affirmatively when Judge Stone asked if the settlement as read by plaintiff's counsel was fair and equitable and fully reflected what had been agreed upon. Based upon Judge Stone's extensive inquiry into the consent and understanding of the parties, we hold it is reasonably apparent from the record that both plaintiff and defendant understood the stipulated terms, *see Watson*, 118 N.C. App. at 538, 455 S.E.2d at 868, and that the consent of defendant to the oral stipulations as read by plaintiff's counsel was valid. Notwithstanding, there remains the issue of defendant's subsequent attempt to withdraw such consent following the hearing, but prior to entry of the Order.

**[2]** For a valid consent order, the parties' consent to the terms, *King*, 225 N.C. at 641, 35 S.E.2d at 895, "must still subsist at the time the court is called upon" to sign the consent judgment, *Lee v. Rhodes*, 227 N.C. 240, 242, 41 S.E.2d 747, 748 (1947) (citations omitted). If a party repudiates the agreement by withdrawing consent before entry of the judgment, the trial court is "without power to sign [the] judgment." *Id.* at 242, 41 S.E.2d at 749.

In the case *sub judice*, defendant insists he notified his attorney "within hours" of the settlement hearing that he was withdrawing his consent to the oral stipulations and would not authorize counsel's signature to the Order. Although informed of this alleged circumstance at the time of presentation of the Order, Judge Stone nonetheless signed and entered the Order without defendant's consent or the signature of his attorney. Notwithstanding, we conclude subsequent actions of defendant ratified and validated the Order, and that defendant was thereby estopped from challenging the Order.

In this regard, Judge Bray's order contained the following findings of fact:

4. On July 11, 1995, defendant's then counsel . . . wrote a letter to . . . the Rockingham County Department of Social Services in which he stated . . . "the parties reached a settlement on all pending issues."

5. On September 29, 1995, the defendant filed a . . . "Motion in Cause to Modify a Prior Order" in which the defendant alleges . . . "[o]n July 21, 1995, *nunc pro tunc* June 23, 1995, a Consent Order and Judgment was entered awarding the Plaintiff

and the Defendant the joint custody [sic] care and control of the minor children" . . . alleg[ing] that there had been a substantial change of circumstances since the entry of the . . . consent order.

6. On February 5, 1996, the defendant served the plaintiff with a . . . "Motion to Correct Order" . . . request[ing] that the Court modify the July 21, 1995, consent order and judgment to correct a mistake in the visitation provisions. . . . [T]he relief requested by the defendant was granted . . . [and] defendant's counsel then drafted an order . . . entered June 27, 1996.

Judge Bray then concluded in pertinent part:

3. The defendant's counsel indicated the defendant's consent to the entry of the . . . consent order in a letter . . . copied to the Judge more than two weeks after the stipulated settlement was announced.

4. The defendant acquiesced in the validity of the . . . consent order by filing two motions subsequent to the entry of said consent order in which he requested a modification of its terms. Moreover, the defendant's counsel ratified the . . . consent order by drafting an order entered June 27, 1996, which provides that, except as modified, the terms of the . . . consent order remain in full force and effect.

We note in addition that defendant on two occasions failed to perfect appeals arising from the Order in question.

Where a party engages in positive acts that amount to ratification resulting in prejudice to an innocent party, the circumstances may give rise to estoppel. *Howard v. Boyce*, 254 N.C. 255, 265-66, 118 S.E.2d 897, 905 (1961). Further,

"[a] party who, with knowledge of the facts, accepts the benefits of a transaction, may not thereafter attack the validity of the transaction to the detriment of other parties who relied thereon."

*Yarborough v. Yarborough*, 27 N.C. App. 100, 105-06, 218 S.E.2d 411, 415, *cert. denied*, 288 N.C. 734, 220 S.E.2d 353 (1975) (quoting 3 Strong's N.C. Index 2d *Estoppel* § 4); *see Lowry v. Lowry*, 99 N.C. App. 246, 253, 393 S.E.2d 141, 145 (1990) (wife's acceptance of agreement benefits for three years ratified contract, and wife therefore estopped from claiming agreement not settlement she authorized); *see also Amick v. Amick*, 80 N.C. App. 291, 294-95, 341 S.E.2d 613,

614-15 (1986) (defendant estopped from denying validity of separation agreement where plaintiff relied upon and performed obligations pursuant to terms thereof), and *Mayer v. Mayer,* 66 N.C. App. 522, 531-35, 311 S.E.2d 659, 666-68, *disc. review denied,* 311 N.C. 760, 321 S.E.2d 140 (1984) (husband who actively participated in wife's procurement of invalid divorce from her prior husband estopped from denying validity of that divorce).

It must be interjected at this point that the estoppel under consideration is "quasi" or equitable estoppel, under which

> one is not permitted to injure another by taking a position inconsistent with prior conduct, regardless of whether the person had actually relied upon that conduct.

*Id.* at 532, 311 S.E.2d at 666. Under "true" estoppel, "one party induces another to rely to his damage upon certain representations." *Id.* (quoting Comment b, Restatement (Second) of Conflict of Laws § 74 (1971)).

Application of equitable estoppel in general is dependent upon the parties' actions along with the facts and circumstances of each individual case. *See Mayer,* 66 N.C. App. at 534-35, 311 S.E.2d at 667-68. In the case *sub judice,* we particularly note defendant's efforts to modify, correct and enforce stipulated terms of the Order. For example, although defendant's affidavit indicated he withdrew consent within "hours of the agreement," his attorney's 11 July 1995 letter to the Department, mailed eighteen days following the hearing, reflects defendant's acknowledgment and approval of the Order. The letter, copied to Judge Stone, plaintiff's counsel *and defendant,*

> place[ed] [the Department] on notice . . . [that] the parties reached a settlement on all pending issues . . . [and agreed to drop all motions] including [a] Motion . . . requesting assistance from [the] agency.

Nothing in the record indicates defendant objected to or repudiated the foregoing statement of his attorney.

In addition, defendant's 29 September 1995 verified motion to modify provisions of the Order regarding custody of the parties' minor children alleged that, subsequent to entry of the Order, plaintiff purposefully deprived defendant of custodial rights stipulated in the Order, providing grounds for modification thereof. Also, in his 22 February 1996 motion to correct a mistake in the visitation provisions

of the Order, defendant relied upon a transcript of the 23 June 1995 hearing and alleged

> [t]he Consent Order of June 23, 1995 contains a mistake . . . [and] Defendant is in need of an Order of this Court correcting the language of the June 23, 1995 Order to accurately reflect *the parties agreement which was entered into in open court.*

(emphasis added). Specifically, defendant requested that the court "modify the June 23, 1995 Order entered . . . and redraft the Order to conform with what was *agreed upon by the parties.*" (emphasis added). Judge Stone granted the motion and entered an order 27 June 1996 modifying certain visitation provisions of the Order and decreeing that "[a]ll other provisions of the Consent Order and Judgment . . . shall remain in full force and effect except as specifically modified" therein. The record contains no interjection of an objection or appeal by defendant of this order. Finally, in a 20 June 1996 motion, defendant sought to hold plaintiff in contempt for her failure to abide by visitation terms of the Order.

Defendant thus on two occasions failed to perfect appeals directed at the Order, acquiesced in his counsel's reliance upon the Order to deter action by the Department, twice filed motions for modification or correction of the Order citing its entry by agreement in open court, declined to object to or appeal an order providing that all terms of the Order were to remain in full force and effect, and, most significantly, sought to have plaintiff held in contempt for violation of the Order, thereby not only seeking enforcement of provisions therein but also to penalize plaintiff for failing to comply with the Order.

In view of the foregoing facts and circumstances, *see Mayer*, 66 N.C. App. at 534-35, 311 S.E.2d at 667-68, we hold defendant may not now avoid the terms of the Order which he acknowledged, acquiesced in and attempted to modify and enforce over a two year period. *See Hill v. Hill*, 94 N.C. App. 474, 479, 380 S.E.2d 540, 544 (1989) (wife bound by subsequent ratification of property settlement agreement). Moreover, defendant's actions also affected plaintiff's rights and obligations under the Order. *See Yarborough*, 27 N.C. App. at 105-06, 218 S.E.2d at 415. Defendant in essence ratified and affirmed the Order and is now estopped from seeking to avoid its effect.

Prior to concluding, we acknowledge that a consent order signed without the consent of each party is void, *Highway Commission*, 5

N.C. App. at 632, 169 S.E.2d at 134, and emphasize that equitable estoppel is a "personal disability of the party attacking the [order]; it is not a function of the [order] itself," *Mayer*, 66 N.C. App. at 536, 311 S.E.2d at 668. As this Court in *Mayer* explained in rejecting a husband's reliance upon his wife's invalid divorce in which he had participated:

> We are not unmindful of [husband's] argument that to estop him from questioning the divorce's validity would have, as he puts it, the effect of validating a marriage which G.S. § 51-3 declares a nullity. There is a difference, however, between declaring a marriage valid and preventing one from asserting its invalidity. The theory behind the equitable estoppel doctrine is not to make legally valid a void divorce or to make an invalid marriage valid, but rather, to prevent one from . . . avoid[ing] obligations as a spouse. . . . . It is a personal liability of the party attacking the divorce judgment; it is not a function of the divorce decree itself.

*Id.* (citations omitted). The effect of our decision, therefore, is not to make a void court order valid, but rather to preclude defendant, by virtue of his ratification thereof, from subsequently attacking the validity of the Order.

As to defendant's remaining arguments, suffice it to say we have carefully considered each and find them unpersuasive.

In short, Judge Bray's findings of fact, supported by the evidence and therefore conclusive on appeal, *Wynnewood Corp.*, 27 N.C. App. at 615, 219 S.E.2d at 790, sustain her determination that defendant ratified the Order by his actions and was thus equitably estopped from challenging the validity thereof. Judge Bray therefore did not abuse her discretion in denying defendant's Motion. *See Burwell*, 30 N.C. App. at 112, 226 S.E.2d at 221.

Affirmed.

Judges WALKER and McGEE concur.