IN RE: H.S.
No. COA07-361
Court of Appeals of North Carolina.
Filed August 7, 2007
This case not for publication
Assistant County Attorney Theresa A. Boucher, for petitioner-appellee Forsyth County Department of Social Services.
Womble Carlyle Sandridge and Rice, PLLC, by Aulica Lin Rutland, for guardian ad litem.
Susan J. Hall, for respondent-appellant.
TYSON, Judge.
D.S. ("respondent") appeals from order entered terminating her parental rights to her minor child, H.S. We affirm.

I. Background
Respondent is the mother of H.S., the eldest of three children born to her. H.S. first came into the custody and care of the Forsyth County Department of Social Services ("Forsyth DSS") in May 2003 at eighteen months old, after her younger infant brother, J.S., was transported to North Carolina Baptist Hospital in serious condition. J.S. was seventeen days old and diagnosed with shaken baby syndrome. J.S. and H.S. were removed from respondent's home and placed in a foster home. H.S. was returned to her parents' home in May 2004 after a trial court concluded that she was not abused or neglected. Her brother, J.S., was found to be an abused juvenile and respondent relinquished her parental rights to him and he was subsequently adopted by his foster parents in March 2005.
On 9 May 2005, respondent gave birth to a third child, D.S., another boy. At the age of eleven weeks, D.S. was transported to North Carolina Baptist Hospital, but was pronounced dead upon arrival. D.S.'s death was caused by multiple acute blunt force injuries to the chest, including multiple rib fractures, bruises to the face, subdural and subarachnoid bleeding on the brain, bleeding on the spinal cord, and retinal hemorrhages. The injuries were determined not to have resulted from an accident.
On 31 July 2005, H.S. was removed from respondent's home and placed in the same home as her younger brother, J.S. A juvenile petition alleging H.S. to be abused and neglected was filed in Stokes County District Court on 1 August 2005. The petition was subsequently transferred to the Forsyth County District Court on 29 August 2005.
On 26 April 2006, Forsyth DSS filed a petition to terminate the parental rights of respondent and respondent's husband, the child's legal father, and of the parental rights of the child's biological father. On 7 July 2006, the trial court conducted an adjudicatory hearing on the juvenile petitions filed the Stokes County and Forsyth County DSS. At this hearing, the parties stipulated that H.S. was a neglected juvenile and the trial court adjudicated her as such. The trial court set a disposition and permanency planning hearing on 10 July 2006. At the conclusion of the three day hearing, the trial court entered an order on 23 August 2006 concluding that reunification was not appropriate and directing that a hearing on the pending petition to terminate respondent's parental rights be scheduled. The trial court noted in the order that respondent had sought to appeal from its permanency planning decision.
On 4 October 2006, the trial court heard the petition to terminate respondent's parental rights. After several days of hearings, the trial court terminated respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) on the ground of abuse and neglect. The trial court noted in its order that respondent's husband and the child's biological father both signed documents relinquishing their parental rights. Respondent appeals.

II. Issues
Respondent argues the trial court erred by: (1) concluding in the permanency planning order that Forsyth DSS expended reasonable efforts to reunite the family and that reunification was not appropriate; (2) failing to conduct a permanency planning hearing within thirty days of the disposition hearing; and, (3) concluding she had neglected H.S.

III. Reunification
Respondent first contends the trial court erred by concluding that reasonable efforts were expended by Forsyth DSS to reunite the family and that reunification was not appropriate. We disagree.
An order continuing custody of a juvenile with Forsyth DSS, whether a disposition or review order, must contain findings of"whether a county department of social services has made reasonable efforts to prevent or eliminate the need for placement of the juvenile, unless the court has previously determined . . . that such efforts are not required or shall cease[.]" N.C. Gen. Stat. § 7B-507(a)(2) (2005). The trial court may direct that "reasonable efforts to eliminate the need for placement of the juvenile . . . shall cease if the court makes written findings of fact that . . . Such efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time." N.C. Gen. Stat. § 7B-507(b)(1) (2005). "Reasonable efforts" are defined as:
The diligent use of preventive or reunification services by a department of social services when a juvenile's remaining at home or returning home is consistent with achieving a safe, permanent home for the juvenile within a reasonable period of time. If a court of competent jurisdiction determines that the juvenile is not to be returned home, then reasonable efforts means the diligent and timely use of permanency planning services by a department of social services to develop and implement a permanent plan for the juvenile.
N.C. Gen. Stat. § 7B-101(18) (2005). Here, the trial court concluded that Forsyth DSS had "expended reasonable efforts to attempt to reunite this family and such reunification is not appropriate at this time."
In the permanency planning order, the trial court found that Forsyth DSS's permanency planning team met and reviewed H.S.'s progress and the services provided to H.S. and her family. The team determined that "there are no services available which have not been successfully completed by this family which would assist this family and provide for the successful reunification of H.S. in a reasonable period of time and be in the best interest of the child." The trial court also listed ten services offered by Forsyth DSS to prevent or eliminate the need for placement of H.S. in foster care. These services included a permanency planning action team which identified and discussed issues and concerns and which invited parental participation, supervised visitations between H.S. and her parents, and counseling and medical referrals. Respondent does not assign error to these findings. In the absence of an assignment of error, the findings are presumed to be supported by competent evidence and are binding on appeal. Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).
Although respondent lists in her brief a number of assignments of error challenging the sufficiency of the evidence to support certain findings of fact under the first question presented, respondent does not argue them in her brief. Instead, she solely challenges the conclusion of law that Forsyth DSS expended reasonable efforts to attempt to reunite the family. Her challenge to these findings of fact is deemed abandoned. See In re B.D., 174 N.C. App. 234, 239, 620 S.E.2d 913, 916 (2005), disc. rev. denied, 360 N.C. 289, 628 S.E.2d 245 (2006).
In these findings, the trial court found, inter alia, "that there are no additional services available for either parent that would be successful and provide the necessary protection for H.S." The trial court also found that further reunification efforts by Forsyth DSS "would clearly be futile and inconsistent with the juvenile's health, safety, and need for a safe permanent home within a reasonable period of time."
The trial court further found H.S.'s best interest would not be served by returning her to respondent's home based upon the physical violence H.S. had witnessed. H.S. suffers from post-traumatic stress syndrome from having witnessed acts of violence perpetrated upon her infant brothers and direct acts of violence inflicted upon her. When H.S. began therapy in September 2005, she experienced "flashbacks," reliving past events. These flashbacks are triggered by psychological stressors. The trial court found H.S.'s medical and emotional condition is unusual for a child of her age and respondent "does not have the capacity to provide H.S. with the care and support she needs at this time." These findings support the trial court's conclusion of law that Forsyth DSS expended reasonable efforts to reunite the family and that reunification is inappropriate. This assignment of error is overruled.

IV. Permanency Planning Hearing
Respondent next contends that the trial court erred by failing to conduct a permanency planning hearing within thirty days of the disposition hearing as required by N.C. Gen. Stat. § 7B-507(c). We disagree.
N.C. Gen. Stat. § 7B-507(c) (2005) provides:
At any hearing at which the court finds that reasonable efforts to eliminate the need for the juvenile's placement are not required or shall cease, the court shall direct that a permanency planning hearing as required by G.S. 7B-907 be held within 30 calendar days after the date of the hearing and, if practicable, shall set the date and time for the permanency planning hearing.
The adjudication order filed 7 July 2006 decreed, "[t]he disposition hearing and a permanency planning hearing . . . shall be held on July 10, 2006, at 9:30 a.m. All parties stipulate to the hearing being consolidated and will waive any irregularities in this matter." Respondent does not contend that she did not make this stipulation, and will not be heard to complain that a separate permanency planning hearing was not held. A party is estopped from contesting the terms of an order in which the party joined or acquiesced. Chance v. Henderson, 134 N.C. App. 657, 666, 518 S.E.2d 780, 786 (1999). This assignment of error is overruled.

V. Neglect
Respondent's final contention is that the trial court erred by concluding she neglected H.S. The trial court terminated respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), which provides that parental rights may be terminated upon a finding the parent has abused or neglected the juvenile. A juvenile is abused if the parent "[c]reates or allows to be created serious emotional damage to the juvenile; serious emotional damage is evidenced by a juvenile's severe anxiety, depression, withdrawal, or aggressive behavior toward himself or others." N.C. Gen. Stat. § 7B-101(1)(e) (2005). A neglected juvenile is defined as one "who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, orcaretaker." N.C. Gen. Stat. § 7B-101(15) (2005). "In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home where another juvenile has died as a result of suspected abuse or neglect or lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home." Id. Termination of parental rights on the ground of neglect cannot be based solely on past neglect and must be based on evidence showing neglect continuing at the time of the termination proceeding. In re Ballard, 311 N.C. 708, 716, 319 S.E.2d 227, 232 (1984). Respondent argues the evidence fails to establish the existence of neglect at the time of the hearing. We disagree.
This Court has stated that when a child has not been in the custody of the parent for a significant period of time prior to the termination hearing, "requiring the petitioner in such circumstances to show that the child is currently neglected by the parent would make termination of parental rights impossible." The requisite finding of neglect at the time of the hearing may be based upon a showing of a "history of neglect by the parent and the probability of a repetition of neglect." In re Shermer, 156 N.C. App. 281, 286, 576 S.E.2d 403, 407 (2003) (internal citations omitted).
The trial court's findings show that H.S. was returned to respondent's home by order dated 7 May 2004. Respondent and her husband were ordered to complete various services in order to be reunited with their son, J.S., who had sustained serious non-accidental injuries while in the sole care of respondent and her husband. Although respondent completed the services, which included parental classes and therapy, H.S. regressed in her development while under respondent's care and supervision. H.S. was described as out of control and running wild, her hair was not combed, her clothes were dirty, her language was profane, and she was unable to control her bladder and bowel even though she had been potty trained while in foster care. When the foster family who adopted J.S. visited respondent six weeks after she gave birth to D.S., they observed that D.S. had a wet, leaking diaper and a bad case of diaper rash. The foster mother babysat D.S. and H.S. on 22 July 2005 and observed that D.S. had a bruise on his ear, which was not present two days earlier. No bottle, formula, or pacifier was provided for the babysitter to give to D.S. The autopsy of D.S. showed that the infant sustained multiple injuries at separate times, including a contusion to his right ear. D.S. had eight rib fractures which occurred between 20 to 30 July 2005, and twenty one rib fractures which occurred prior to 20 July 2005.
When H.S. returned to the foster home in August 2005, the foster mother observed H.S. kick her younger brother, J.S., and shook him violently. She also observed that H.S. did not observe a regular schedule for eating or bedtime. H.S. is fearful and distrustful of care givers, especially respondent. H.S. is very guarded when she talks about respondent, but talks more freely about her father. The foregoing findings demonstrate that respondent has a history of not providing proper care, discipline, or supervision of H.S. or any of her children and that it is probable that her neglect of H.S. will continue. This assignment of error is overruled.

VI. Conclusion
The trial court did not err in finding and concluding that reunification of H.S. with respondent was inappropriate or that H.S. is a neglected juvenile. The trial court did not err by consolidating the permanency planning and dispositional hearings, when respondent does not argue that this consolidation was consented to by all parties. The order terminating respondent's parental rights to H.S. is affirmed.
Affirmed.
Judges MCGEE and ELMORE concur.
Report per Rule 30(e).