IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-128

No. COA20-803

Filed 1 March 2022

Mecklenburg County, No. 16-CVD-2703

VINAYA MADDUKURI, Plaintiff,

v.

NIRUPAMA CHINTANIPPU, Defendant.

Appeal by defendant from orders entered 17 April 2020 by Judge Gary L. Henderson in Mecklenburg County District Court. Heard in the Court of Appeals 21 September 2021.

> *James, McElroy & Diehl, P.A., by Preston O. Odom, Jonathan D. Feit, and Caroline D. Weyandt, for plaintiff-appellee.*
>
> *Passenant & Shearin Law, by Brione B. Pattison, for defendant-appellant.*

GORE, Judge.

¶ 1 Defendant, Nirupama Chintanippu, appeals the trial court's Order (Re: Permanent Child Custody) ("Custody Order") and Order and Judgment (Re: Equitable Distribution) ("ED Order"). We hold the trial court did not err and affirm.

I.

¶ 2 Ms. Chintanippu and plaintiff, Vinaya Maddukuri, were married on 12 May 2003. The marriage produced one child, born in May 2010. Ms. Chintanippu and Mr. Maddukuri physically separated on 19 May 2013. On 10 February 2016, Mr.

Maddukuri filed a Complaint seeking child custody, a temporary parenting arrangement, child support, equitable distribution, and absolute divorce. On 11 April 2016, Ms. Chintanippu filed an Answer and Counterclaim seeking custody of the minor child, child support, equitable distribution, and attorney's fees. The Answer admitted to Mr. Maddukuri's allegations relating to the claim for absolute divorce. A Judgment of Divorce was entered on 13 May 2016.

¶ 3        Mr. Maddukuri submitted an Equitable Distribution Affidavit on 10 October 2016. Ms. Chintanippu submitted her Equitable Distribution Affidavit on 19 October 2016. The trial court's Final Equitable Distribution Pretrial Order was entered on 7 July 2017.

¶ 4        This matter came on for trial on 7 July 2017. The trial proceeded for three days, hearing testimony and evidence presented by Mr. Maddukuri. On the third day of trial the parties came to a settlement agreement on the issues of physical child custody, legal custody, child support, equitable distribution, and attorney's fees. The settlement agreement covered all matters, except for a few details where the parties did not agree. The settlement terms were read into the record and the trial court asked both parties if they understood the terms and had agreed to the terms, but a

written agreement was not signed or entered.[1] The trial court gave the parties a week to continue to negotiate and resolve the remaining issues out of court.

¶ 5   A hearing was held on 19 December 2017 where the trial court heard arguments on the five remaining issues, but at the hearing two additional issues arose, which the trial court requested the parties submit written arguments on. Over the following two years the parties were unable to finalize all the terms of their agreement, did not reduce the terms of the agreement to writing, and did not submit a final written order to the trial court for entry.

¶ 6   On 20 March 2019, Mr. Maddukuri withdrew his consent to the partial agreement reached in July 2017. Following a scheduling conference on 28 June 2019, the trial court ordered that the parties shall resume the trial that had partially taken place in July 2017. The matter came on for trial on 4 and 5 February 2020. On 17 April 2020, the trial court entered a Custody Order and ED Order. Ms. Chintanippu filed written notice of appeal on 14 May 2020.

II.

¶ 7   Ms. Chintanippu argues the trial court erred by concluding the terms of the 2017 agreement were not stipulations, resuming trial on all issues, allowing Mr. Maddukuri to take a position at trial that was inconsistent with the 2017 agreement,

---

[1] The record reflects only Mr. Maddukuri gave his assent to the terms of the agreement.

and by entering orders that are inconsistent with the terms of the 2017 agreement. We conclude the trial court did not err by allowing Mr. Maddukuri to withdraw his consent to the 2017 agreement and continuing trial.

¶ 8     Ms. Chintanippu bases her arguments on the fact that stipulations are agreements between the parties which establish a disputed fact and that a party is bound by its stipulation. *See Smith v. Beasley*, 298 N.C. 798, 259 S.E.2d 907 (1979); *see also Moore v. Richard W. Farms*, 113 N.C. App. 137, 141, 437 S.E.2d 529, 531 (1993). However, Ms. Chintanippu fails to recognize the distinction between stipulations of fact and stipulations for settlement. The majority of cases Ms. Chintanippu relies on for support involve stipulations of fact. *See, e.g.*, *Estate of Carlsen v. Carlsen*, 165 N.C. App. 674, 678, 599 S.E.2d 581, 584 (2004); *Plomaritis v. Plomaritis*, 222 N.C. App. 94, 101, 730 S.E.2d 784, 789 (2012); *Young v. Young*, 133 N.C. App. 332, 335, 515 S.E.2d 478, 480 (1999); *Sharp v. Sharp*, 116 N.C. App. 513, 521, 449 S.E.2d 39, 43, *rev. denied*, 338 N.C. 669, 453 S.E.2d 181 (1994); *Lawling v. Lawling*, 81 N.C. App. 159, 166, 344 S.E.2d 100, 106 (1986).

¶ 9     "[S]tipulations are of two kinds, some being mere admissions of fact relieving a party from the inconvenience of making proof, while others have all the characteristics of concessions of some rights as consideration for those secured, the courts have sometimes based the granting or denial of relief upon the nature of the stipulation." 73 Am. Jur. 2d <u>Stipulations</u> § 14 (2021). "Thus, stipulations for

settlement are generally regarded as removed from the sphere of [stipulations of fact] . . . ." *Id.*; *see also Winrow v. Discovery Ins. Co.*, No. COA06-1618, __ N.C. App. __, __, __ S.E.2d __, __ (filed March 4, 2008) (unpublished) (recognizing there is a distinction between stipulations of fact and stipulations for settlement). The stipulations in the case *sub judice* were stipulations for settlement.

¶ 10    Ms. Chintanippu points to *McIntosh v. McIntosh*, 74 N.C. App. 554, 328 S.E.2d 600 (1985), to argue that the stipulations are binding upon the parties. This Court did consider stipulations for settlement in *McIntosh*. The *McIntosh* Court discussed the procedure for entering oral stipulations for settlement as such,

> We believe the same scrutiny which is applied to separation agreements must also be applied to stipulations entered into by a husband and a wife regarding the distribution of their marital property. Any agreement entered into by parties regarding the distribution of their marital property should be reduced to writing, duly executed and acknowledged. If, as in the case *sub judice*, oral stipulations are not reduced to writing it must affirmatively appear in the record that the trial court made contemporaneous inquiries of the parties at the time the stipulations were entered into. It should appear that the court read the terms of the stipulations to the parties; that the parties understood the legal effects of their agreement and the terms of the agreement, and agreed to abide by those terms of their own free will.

74 N.C. App. at 556, 328 S.E.2d at 602. The Court in *McIntosh* vacated the trial court's order because the trial court did not inquire into the parties' understanding of the legal effect of their agreement or the terms of the agreement and failed to have the

parties acknowledge that the terms stipulated to accurately reflected their agreement. 74 N.C. App. at 557, 328 S.E.2d at 602.

¶ 11 Here, the terms of the stipulations were properly read into the record and it appears that the trial court properly inquired whether the parties understood the legal effects and terms of their agreement, and that they agreed to the terms. However, the record only reflects that Mr. Maddukuri gave his affirmative assent to the agreement and is silent as to Ms. Chintanippu's response. Therefore, we cannot say that the procedure provided for in *McIntosh* was followed here.

¶ 12 This court again examined stipulations for settlement in *Chance v. Henderson*, 134 N.C. App. 657, 518 S.E.2d 780 (1999). In *Chance*, the parties read the settlement terms aloud in open court at a scheduled hearing. 134 N.C. App. at 659, 518 S.E.2d at 781. The stipulated agreement addressed custody and visitation arrangements, alimony, child support, property division, and attorney's fees and complied with the requirements stated in *McIntosh*. *Id*. The defendant allegedly withdrew his consent to the agreement within hours of the hearing and instructed his attorney not to sign the order agreed upon in open court. 134 N.C. App. at 659, 518 S.E.2d at 782. Approximately one month later, the trial judge entered an order in line with the stipulated agreement, despite the defendant's council informing the trial judge that defendant had withdrawn his consent. *Id*. This Court stated the rule for entering a consent order as, "[f]or a valid consent order, the parties' consent to the terms must

still subsist at the time the court is called upon to sign the consent judgment. If a party repudiates the agreement by withdrawing consent before entry of the judgment, the trial court is without power to sign the judgment." 134 N.C. App. at 663, 518 S.E.2d at 784. However, the Court in *Chance* ultimately concluded that the defendant's subsequent actions ratified and validated the order, and that defendant was thereby estopped from challenging the order. 134 N.C. App. at 663, 666, 518 S.E.2d at 784, 785-86.

¶ 13      While *Chance* was not ultimately decided on the rule for withdrawal of consent to stipulations for settlement, the analysis in *Chance* indicates that a party to a stipulation for settlement can withdraw their consent to the agreement before the court enters an order on the matter, so long as the stipulations for settlement are not reduced to writing. If stipulations for settlement are reduced to writing and signed by the parties, contract principles would apply to the stipulations, including to a party's ability to withdraw consent. Under *Chance*, it would be improper for a trial court to enter an order based on stipulations for settlement once a party has withdrawn their consent to the agreement. Thus, once a party withdraws consent to the stipulations for settlement, in order to resolve the issues before the court, the trial court must continue proceedings from the point which they were stopped due to the parties' agreement. In the case *sub judice,* the trial court properly resumed trial from

the point the July 2017 trial was stopped for the parties to enter their stipulations for settlement.

## III.

For the foregoing reasons we hold the trial court did not err by resuming trial and no longer treating the stipulations for settlement as binding. The trial court's orders are affirmed.

AFFIRMED.

Judges TYSON and JACKSON concur.