STEEL CREEK DEVELOPMENT CORPORATION, PLAINTIFF, AND R. S. SMITH AND WIFE, EVELYN L. SMITH, ADDITIONAL PARTY PLAINTIFFS v. EARL TERRY JAMES AND WIFE, MARTHA S. JAMES, D/B/A TERRY'S MARINA, DEFENDANTS

No. 130

(Filed 15 July 1980)

1. **Appeal and Error § 6.2— interlocutory order for removal of boathouse anchors—substantial right affected—order appealable**

   In an action for trespass where plaintiff sought a mandatory injunction requiring defendants to remove floats and boat slips constructed by defendants and allegedly anchored to plaintiffs' submerged lands, defendants had the right to appeal from the trial court's order which granted summary judgment for plaintiffs except on the issue of damages, ordered that the matter be placed on trial before a jury on the sole issue of damages, and ordered that defendants immediately remove concrete anchors which they had placed on the submerged lands of plaintiffs, since the order to remove was not delayed pending trial on the issue of damages; defendants would immediately suffer the consequences of complying with the order that they remove the anchors; and a substantial right of defendants was thereby affected, giving them the right to appeal from the interlocutory order.

2. **Trespass § 7; Estoppel § 4.7— boathouse anchored on plaintiffs' land—sufficiency of evidence of trespass—notice to defendants—insufficiency of evidence of equitable estoppel**

   In an action for trespass where plaintiffs claimed that defendants constructed concrete anchors for their boathouses on plaintiffs' submerged land, and where defendants claimed equitable estoppel, the trial court properly entered summary judgment for plaintiffs since defendants admitted in their answers to interrogatories that the two encroachments of which plaintiffs complained did extend beyond the boundaries of the property owned by defendants and the trespass was thus established beyond genuine dispute; and since defendants' deposition indicated that they were aware of plaintiffs' objections as soon as some of the boat slips were placed in the water, but they went ahead and completed the first boathouse and built the second one after plaintiffs had brought suit, thus showing that defendants did not rely to their detriment on plaintiffs' actions or inaction and so could not rely on the defense of equitable estoppel.

3. **Rules of Civil Procedure § 26— taking of deposition prohibited—no prejudice**

   The trial court did not err in refusing to allow defendants to take the deposition of one of the plaintiffs since the parties had had approximately

seven years to conduct discovery in this case, and the time for discovery was not unjustifiably, unfairly or inequitably cut short to the prejudice of defendants.

ON defendants' petition for discretionary review pursuant to G.S. 7A-31 from an order entered in the Court of Appeals allowing plaintiffs' motion to dismiss the appeal as an improper interlocutory appeal.

Plaintiff Steel Creek Development Corporation (corporation) brought this action seeking to obtain a mandatory injunction requiring defendants to remove the floats and boat slips constructed and launched by defendants in 1971. Plaintiff alleges that the floats and boat slips trespass on its property. The complaint was filed on 21 April 1972 and on 17 December 1973 it was amended to include the additional floats and boat slips constructed and launched by the defendants after institution of the suit and to include a claim for damages resulting from the trespasses.

From the pleadings, interrogatories, and affidavits contained in the record and the briefs submitted the following fact situation emerges. Duke Power Company as successor to the Wateree Power Company has easements to back, pond or raise the waters of the Catawba River in connection with a dam located on the river. An area that was flooded is now known as Lake Wylie. Plaintiff R. S. Smith purchased certain of the dry and submerged land in the area in 1930. On 20 July 1960 Smith and his wife, Evelyn L. Smith, formed the corporation and the land Smith had purchased was transferred to the corporation on 31 August 1960.

In March of 1961 defendants leased 6.74 acres of dry and submerged land from the corporation (with an option to purchase) leaving the corporation with approximately 42 acres of submerged land and 12 acres of dry land. The pilings from the old Pine Harbor Club which burned in 1956 are located in the leased area and extend into the submerged area owned by the corporation which was not leased to the defendants. Defendants constructed a marina on these pilings which they continue to operate. Defendants exercised their option to purchase the land in 1963. By this time they had constructed the following structures which they admit extend beyond the boundaries described in the survey which was made of the land they leased and then purchased: (a) a

---

Development Corp. v. James

---

deck and floating pier erected in front of their restaurant in 1961; (b) a floating pier with gas pumps built in 1961; (c) a floating boathouse built in 1961 with eight covered slips for the storage of boats; (d) a floating boathouse with eleven covered slips built in 1962; and (e) a floating boathouse with ten covered slips built in 1963. After purchasing the land they built the following structures which they also admit extend beyond the boundaries described in the survey made of the land they leased and then purchased: (a) a stationary pier built in 1964; (b) a floating boathouse with sixteen covered slips built in 1968; (c) a floating boathouse with twenty-four covered slips built in 1971; and (d) a floating boathouse with twenty-four covered slips built in 1972. Plaintiffs' action is concerned solely with the boathouse built in 1971 and the one built in 1972 after suit had been brought.

Defendants defended on the grounds that their boat slips and floats do not touch in any manner on the submerged land allegedly owned by the plaintiff and that plaintiff cannot maintain an action in trespass because it is not in actual or constructive possession of the property it purports to own; that the floats and boat slips are located upon the waters of Lake Wylie which the defendants allege are public waters and they have a right to use the public waters fronting the dry land that they own; and that plaintiff should be equitably estopped from complaining of any trespass because plaintiff knew of defendants' intentions to build the boathouse in 1971 and nothing was said until after it was placed in the water. Later, defendants amended their answer to include the defense of laches because plaintiff knew in 1961 that defendants intended to build improvements upon the land and operate a business and plaintiff brought no suit until 1972.

While the suit was pending in the trial court, the corporation was dissolved and the land owned by it was conveyed to Smith and his wife. On 13 August 1976 the complaint was amended to include Smith and his wife as additional parties plaintiff. These two parties adopted the pleadings of the corporate plaintiff and reiterated the prayer for injunctive relief contained in the original complaint and the claim for damages contained in the first amendment to the complaint.

Defendants answered the amended complaint and raised the same defenses contained in their original answer except for the

defense of laches. Defendants also counterclaimed for damages in the amount of $500,000.

Plaintiff moved to strike these further defenses and counterclaim on the ground that defendants were only entitled to "answer any new matters arising from the . . . [addition of] two parties plaintiff." Judge Graham so ordered on 14 January 1977 but this order was reversed by the Court of Appeals in an opinion by Judge Webb with Judge Hedrick concurring and Judge Britt noting his dissent. The decision is reported at 35 N.C. App. 272, 241 S.E. 2d 122 (1978). No appeal was taken to this Court.

Defendant Earl Terry James' deposition was taken on 2 January 1975. In it he stated that the boathouses built in 1971 and 1972 are anchored in the lake by means of pyramid shaped concrete anchors attached to the boathouses with cables. Each anchor is four feet square on the bottom side and there are six anchors for each of the two boathouses. Defendant admitted that:

"I would say that there are at least four of these concrete anchors which hold down the ends of the boat house over Lake Wylie rest on the land that is beyond the boundary of the land that is described in the Deed. There are at least eight anchors holding these two buildings in place out into Lake Wylie resting on land under Lake Wylie beyond the front boundary of land described in the Deed. In addition there are four other structures that extend beyond the boundary (indicating on the Exhibit) out into Lake Wylie. I am referring to the storehouse and four other boat houses that extend beyond my boundary line out into Lake Wylie. They are located adjacent beyond the yellow line that encompasses the land bought from Steel Creek Development Corporation."

In 1979 both sides moved for summary judgment and plaintiffs moved to dismiss defendants' counterclaim. On 30 May 1979 Judge Snepp entered judgment in the case denying defendants' motion for summary judgment; granting plaintiffs' motion for summary judgment except with respect to the issue of damages resulting from the trespass; ordering that the matter "be placed on for trial before a jury as to the sole issue of damages;" ordering that defendants' counterclaim for damages be dismissed; and ordering that:

"defendants remove forthwith the concrete anchors which they have placed on the submerged land of the plaintiffs, and that they be permanently enjoined from using the land of the plaintiffs in such manner."

Defendants appealed to the Court of Appeals. The order dismissing the appeal was entered on 29 January 1980 and we allowed defendants' petition for discretionary review on 1 April 1980.

Other facts relevant to the decision of this case will be related in the opinion.

*Richard A. Cohan for the defendant-appellants.*

*Fairley, Hamrick, Monteith & Cobb by Laurence A. Cobb and F. Lane Williamson for the plaintiff-appellees and additional party appellees.*

COPELAND, Justice.

Plaintiffs have moved this Court to dismiss the appeal due to defendants' failure to comply with Rule 28(b)(3) of the Rules of Appellate Procedure. Defense counsel has failed to comply with an elementary rule of appellate procedure requiring that he reference the exceptions and assignment(s) of error immediately following each question presented in the brief.

Failure to follow the rules jeopardizes a client's case and we caution members of the bar to scrupulously follow the rules because appeals are subject to dismissal for such failures. However, this case will be decided on its merits and the motion is overruled.

[1] Plaintiffs moved to dismiss the appeal in the Court of Appeals on the ground that it was an improper interlocutory appeal citing *Whalehead Properties v. Coastland Corp.*, 42 N.C. App. 198, 256 S.E. 2d 284 (1979). The Court of Appeals agreed and the appeal was dismissed. We reversed that court's decision in *Whalehead* and the case is reported at 299 N.C. 270, 261 S.E. 2d 899 (1980).

An interlocutory appeal may be taken when a substantial right of the appealing party has been affected. G.S. 1-277(a). In *Whalehead* we held that such a right had been affected because

although summary judgment was granted for the defendant on its counterclaim thus establishing plaintiffs' liability for breach of contract, it was also ordered that defendant was not entitled to specific performance and the case was set for trial on the issue of damages. Denial of defendant's appeal would have eliminated its opportunity to obtain specific performance. Therefore, a substantial right was affected and pursuant to G.S. 1-277(a) and G.S. 7A-27(b) defendant had the right to appeal.

In *Tridyn Industries, Inc. v. American Mutual Insurance Co.*, 296 N.C. 486, 251 S.E. 2d 443 (1979), we held that defendant had no right to take an interlocutory appeal from an order granting plaintiff partial summary judgment on the issue of defendants' liability and setting the case for trial on the issue of damages. No substantial right of the defendant had been affected because he could wait until after trial on the issue of damages to appeal the question of liability (and any questions arising upon the trial on the issues of damages). The most that he would suffer in waiting to take an appeal only after final judgment had been entered at the conclusion of the trial would be the trial itself on the issue of damages.

Here, a mandatory injunction has been entered ordering defendants to remove the concrete anchors placed on plaintiffs' submerged lands. Unlike the situation in *Tridyn*, the defendants here will suffer more than a trial on the issue of damages. They will immediately suffer the consequences of complying with the order that they remove the anchors from plaintiff's land. This order was not delayed pending the trial on the issue of damages; therefore, a substantial right of the defendants has been affected and they have the right to appeal. However, rather than remand the case to the Court of Appeals for consideration of the merits, we treat the papers filed in this appeal as a motion to bypass the Court of Appeals and allow the motion. Thus, we now turn to the merits of the appeal.

[2]  Defendants contend that it was error to grant summary judgment in plaintiffs' favor on the question of defendants' liability for trespass.

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that any party is entitled to judgment as a matter of law." Rule 56(c), N.C.R. Civ. Pro.

The party moving for summary judgment has the burden of proof on the motion. *Koontz v. City of Winston-Salem*, 280 N.C. 513, 186 S.E. 2d 897 (1972). In order for the plaintiffs to obtain summary judgment they must establish that defendants have trespassed on their land and that there is no genuine issue of material fact with respect to one or more of the essential elements of defendants' defense of equitable estoppel. We will deal with these two parts of the summary judgment issue separately.

Plaintiffs have the burden of proof on their cause of action for trespass. When the party bringing the cause of action moves for summary judgment, he must establish that all of the facts on all of the essential elements of his claim are in his favor and that there is no genuine issue of material fact with respect to any one of the essential elements of his claim. In other words, the party must establish his claim beyond any genuine dispute with respect to any of the material facts. An issue is genuine if it may be maintained by substantial evidence. *Id.* An issue is material if the facts as alleged would constitute a legal defense, would affect the result of the action or would prevent the party against whom it is resolved from prevailing in the action. *Id.* If the movant carries his burden of establishing *prima facie* that he is entitled to summary judgment then his motion should be granted unless the opposing party responds and shows either that a genuine issue of material fact exists or that he has an excuse for not so showing. *Moore v. Fieldcrest Mils, Inc.*, 296 N.C. 467, 251 S.E. 2d 419 (1979). If the movant fails to carry his burden, the opposing party does not have to respond and summary judgment is not proper regardless of whether he responds or not. 2 McIntosh, *North Carolina Practice and Procedure* § 1660.5 (Supp. 1970).

Defendants admitted in their answers to interrogatories that the two encroachments of which plaintiffs complain do extend beyond the boundaries of the property owned by the defendants. However, defendants deny that they are trespassing on the submerged land owned by the plaintiffs. However, in James' deposition he admits that many of the anchors holding down the boathouses launched in 1971 and 1972 are beyond the boundaries of the property owned by him and his wife. Furthermore, Judge

Snepp stated in an order filed on 27 March 1979 that an "interrogatory with respect to ownership of the land in question by the Additional Parties Plaintiff is moot in that the Defendants have never answered Paragraph 13 of the Plaintiffs' cause of action as set forth in the Amendment to Complaint filed August 13, 1976 and that, therefore, the allegations contained in that paragraph are deemed to be admitted."

Paragraph 13 of the Amendment to the Complaint reads as follows:

"That since the institution of this suit, the Plaintiff Steel Creek Development Corporation has conveyed the land in question to the Additional Parties Plaintiff, R. S. Smith and wife, Evelyn L. Smith, by deed duly recorded in the Office of the Register of Deeds for Mecklenburg County, and the Plaintiff corporation has been dissolved."

From all of the evidence contained in the record we hold that plaintiffs have established beyond genuine dispute that anchors connected to the boathouses built and launched by defendants in 1971 and 1972 trespass on submerged land owned by the plaintiffs. This showing does not alone entitle plaintiffs to summary judgment on the issue of liability because defendants raised the defense of equitable estoppel.

Plaintiffs have the burden of proof on their motion for summary judgment, *Koontz v. City of Winston-Salem, supra,* and defendants have the burden of proof on their defense. When the party without the burden of proof on the substantive claim or defense moves for summary judgment he is entitled to it if he can meet the burden of proving that any one or more of the essential elements of the opposing party's claim or defense is nonexistent. *Moore v. Fieldcrest Mills, Inc., supra.* This is true because the party with the burden of proof on the claim or defense must have evidence on each and every one of the essential elements of his claim or defense before he can get to the jury. If his proof is lacking on any one of those essential elements then he has not made out his claim or defense.

There are several ways in which the movant may show that he is entitled to summary judgment. He may produce his own evidence, often through affidavits, of the nonexistence of one or

more of the essential elements of the opposing party's claim or defense. As noted above, when the movant does not carry his burden of producing such evidence summary judgment is inappropriate whether or not the opposing party responds. When the movant does carry his burden, he is entitled to summary judgment unless the opposing party responds with evidence showing that a genuine issue of material facts exists or that he has an excuse for not so showing. When the movant carries his burden of producing evidence on the motion and the opposing party responds, often with affidavits, then movant will obtain a forecast of the opposing party's evidence and such a forecast may reveal that that party does not have sufficient evidence to support one or more of the essential elements of his claim or defense. 2 McIntosh, *supra.* The movant may show through the evidence produced through discovery that the opposing party cannot produce evidence to support one or more of the essential elements of his claim or defense. *Moore v. Fieldcrest Mills, Inc., supra.* This is another manner in which to obtain a forecast of the opposing party's evidence. Thus, a party may succeed on a summary judgment motion upon the strength of his own evidence or upon the weakness of the opposing party's evidence when such a forecast of that evidence can be obtained in discovery or in response to movant's *prima facie* showing on the motion.

Here, both parties moved for summary judgment at the conclusion of the discovery process and relied upon the evidence produced during discovery. From this evidence, a forecast of defendants' evidence on his estoppel defense was obtained. The trial judge was correct in granting plaintiffs' motion for summary judgment on the issue of liability because in addition to adequately establishing the trespass plaintiffs showed that defendants' evidence was insufficient with respect to one or more of the essential elements of the estoppel defense.

"The doctrine of estoppel rests upon principles of equity and is designed to aid the law in the administration of justice when without its intervention injustice would result.

"Equitable estoppel arises when an individual by his acts, representations, admission, or by his silence when he has a duty to speak, intentionally or through culpable negligence induces another to believe that certain facts exist,

and such other person rightfully relies and acts upon that belief to his detriment." *Thompson v. Soles*, 299 N.C. 484 486-87, 263 S.E. 2d 599, 602 (1980) (citations omitted).

Defendant James stated in his deposition that he discussed the plans for the boathouses, their construction and the purchasing of the materials with Smith before he started to work. Smith knew the length of the boathouse built in 1971 because he looked at the construction plans. That boathouse has twenty-four boat slips. Between eight and ten of them had been completed and were in the water when surveyors came at Smith's request to locate the boundary between plaintiffs' land and defendants' land. Prior to that, but still at a point after actual construction had begun, Smith "walked out on the boathouse and says 'you're going to have to cut this thing in two right here.' . . . [James] asked him what he was talking about and he said 'this is my property out here over the lake.'"

The following then appears in the record in the narrative of defendant's deposition:

"After . . . [the surveyors left] I went ahead and completed the erection and the placement of all the boat slips located in boat house 'A' [built in 1971] over Lake Wylie. I increased the number of boat slips from eight to ten to forty-eight. That is both boat house 'A' and 'B' [built in 1972]. [Two boathouses with twenty-four slips in each one.] Boat house 'B' was built after suit was brought. When you built all of the slips that constituted boat house 'B' you knew Mr. Smith objected and I figured that he would object to anything that I built."

Defendants were informed of Smith's objections as soon as some of the slips were placed in the water. Defendant went ahead and completed the first boathouse and built the second one after plaintiff had brought suit. Thus, it is clear that defendants did not rely to their detriment on plaintiffs' actions or inaction. They proceeded in the face of plaintiffs' objections which were lodged soon enough to put defendants on notice to stop construction until the issue of trespass was resolved. Summary judgment was properly entered for the plaintiffs on the issue of liability and it was proper to order defendants to remove the anchors from plaintiffs'

submerged land and to set the case for trial on the issue of damages.

[3] Defendants also contend that it was error to refuse to allow him to take R. S. Smith's deposition. On the facts of this case, there was no error.

The lawsuit was filed in 1972 and was still pending in 1979. The parties engaged in various forms of discovery during this seven year period. On 9 October 1978 plaintiffs submitted two interrogatories to the defendants. On 16 January 1979 Judge Snepp entered an order stating that the matter had been heard and that the case would be ready for trial as soon as defendants answered those two interrogatories. He ordered that defendants file their answer to those interrogatories on or before 1 February 1979 and that the case be placed on the ready calendar as soon as the answers to the interrogatories were filed.

On 13 February 1979 plaintiff sought to have defendants' answer sticken due to their failure to comply with the judge's order that they file answers to the interrogatories. Defendants served a "Subpoena for Oral Deposition" on R. S. Smith which was received on 24 February 1979. Defendants' answers to plaintiffs' interrogatories were verified by James on 16 February 1979. Defendants also moved on that date that plaintiffs be sanctioned due to Smith's failure to appear for the taking of his deposition.

In an order entered 27 March 1979 this request for a sanction against plaintiffs were denied. Judge Snepp ordered that defendants not be allowed to take Smith's deposition and he noted in the order "that this is one of the oldest cases pending in . . . [the trial court], and that this matter should be brought on for trial without further delay."

There was no abuse of discretion in the actions of the trial judge. As a matter of fact, Judge Snepp is to be commended for the manner in which he sought to expedite the proceedings. *Hammer v. Allison,* 20 N.C. App. 623, 202 S.E. 2d 307, *cert. denied* 285 N.C. 233, 204 S.E. 2d 23 (1974). The parties had approximately seven years to conduct discovery in this case. After a hearing, it was ordered on 16 January 1979 that the case be placed on the ready calendar as soon as the answers to interrogatories were filed because the case would then be ready for trial. Judge Snepp

was justified in refusing to tolerate a further delay tactic on the part of the defendants. Ample opportunity for discovery was allowed. The time for discovery was not unjustifiably, unfairly or inequitably cut short to the prejudice of the defendants.

For the reasons stated, we hold that the Court of Appeals' decision to dismiss the appeal was erroneous. The judgment of Judge Snepp is affirmed and the case is remanded to the trial court for trial on the issue of damages.

Remanded.