State v. Orion Processing, LLC, 2016 NCBC 100.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

STATE OF NORTH CAROLINA *ex rel.* ROY COOPER, Attorney General, and THE NORTH CAROLINA STATE BAR,

        Plaintiffs,

    v.

ORION PROCESSING, LLC d/b/a World Law Processing, World Law Debt, World Law Group, and World Law Plan; SWIFT ROCK FINANCIAL, INC. d/b/a World Law Debt, World Law Group, and World Law Plan; DERIN ROBERT SCOTT; BRADLEY JAMES HASKINS d/b/a World Law Group; and WORLD LAW SOUTH, INC. d/b/a World Law Group,

        Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13 CVS 7161

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER AND OPINION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

1.     THIS MATTER is before the Court on Plaintiffs' Motion for Summary Judgment Against Defendant Orion Processing, LLC ("Motion") and Plaintiffs' Amended Motion for Summary Judgment Against Defendant Orion Processing, LLC. For the reasons expressed below, Plaintiffs' Motion is GRANTED.

*North Carolina Department of Justice, by M. Lynne Weaver, Special Deputy Attorney General, for Plaintiff the State of North Carolina ex rel. Roy Cooper, Attorney General.*

*The North Carolina State Bar, Katherine Jean, Counsel, and David R. Johnson, Deputy Counsel, for Plaintiff the North Carolina State Bar.*

*Blanchard, Miller, Lewis & Isley, P.A., by E. Hardy Lewis, for Defendant Orion Processing, LLC.*

Gale, Chief Judge.

## I. INTRODUCTION

2.      Plaintiffs the State of North Carolina ("State") and the North Carolina State Bar ("State Bar") filed a complaint in Wake County Superior Court alleging that Defendants, including Orion Processing, LLC ("Orion"), collectively engaged in a scheme to offer illegal debt-adjusting services and unauthorized legal services to North Carolina consumers in violation of the statutes prohibiting debt adjusting, the unauthorized practice of law, and unfair and deceptive trade practices.

3.      The present Motion relates solely to the claims against Orion. Plaintiffs seek to permanently enjoin Orion's activities in North Carolina, as well as the release of funds held in trust by Orion's counsel to the State for consumer restitution and consumer-protection purposes, subject to the final adjudication of the respective rights of the State and Orion by the bankruptcy court, as explained below.

4.      The Court concludes that the record and evidence that Plaintiffs submitted in support of their Motion shows that there is no genuine issue of material fact and that Plaintiffs are entitled to judgment as a matter of law.

## II. PROCEDURAL HISTORY

5.      Plaintiffs have standing to bring this action pursuant to sections 14-425, 75-15, and 84-37 of the North Carolina General Statutes. Plaintiffs bring this action in their capacities as governmental entities to enforce their respective police and regulatory powers.

6. Plaintiffs filed their original Complaint on May 22, 2013.

7. On May 23, 2013, the superior court entered a Temporary Restraining Order, enjoining Defendants Orion, Swift Rock Financial, Inc. ("Swift Rock"), Derin Robert Scott ("Scott"), and all persons in active concert with Defendants from soliciting or enrolling North Carolina customers in Defendants' debt-settlement program, collecting further fees from North Carolina customers for illegal debt adjusting services, and engaging in the unauthorized practice of law in North Carolina.

8. On June 4, 2013, the superior court entered a Preliminary Injunction Order that continued the terms of the Temporary Restraining Order. In addition, pursuant to the Preliminary Injunction Order, Orion was ordered to deposit $300,000 into the trust account of the law firm Blanchard, Miller, Lewis & Isley, P.A. Pursuant to the terms of the Preliminary Injunction Order, the funds deposited in the trust account are to be disbursed upon either stipulation of the Plaintiffs and Orion or order of the Court. No order has been entered to lift or amend the Preliminary Injunction Order.

9. Plaintiffs filed an Amended Complaint on June 25, 2014, naming World Law South, Inc. ("WLS") and Bradley James Haskins ("Haskins") as additional Defendants.

10. WLS filed a notice of designation on July 8, 2014. On October 6, 2014, the Chief Justice designated the case as exceptional pursuant to Rule 2.1 of the General Rules of Practice for the Superior and District Courts, and the case was

assigned to the undersigned. The parties agreed that the North Carolina Business Court Rules would apply to this case, even though the case was not designated as a mandatory complex business case.

11. Orion filed an Answer on November 19, 2014.

12. On February 27, 2015, Orion filed a voluntary petition for bankruptcy protection under Chapter 11 of the U.S. Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas. Orion filed its Suggestion of Bankruptcy notice with this Court on March 1, 2015.

13. On May 12, 2015, the Court entered an Order determining that the police-powers exception to the automatic bankruptcy stay applies to this matter, and that the Court retained jurisdiction to proceed in this case.

14. On August 20, 2015, the bankruptcy court ordered that Orion's bankruptcy case be converted to a Chapter 7 case and appointed a trustee to assume control over Orion and liquidate the company's assets.

15. Plaintiffs filed their Motion on September 16, 2016.

16. After filing the Motion, Plaintiffs' counsel conferred with counsel for Orion's court-appointed trustee regarding the Motion. On October 14, 2016, Plaintiffs filed an Amended Motion for Summary Judgment Against Defendant Orion Processing, LLC, which made changes to the injunctive provisions of the Motion to address the trustee's expressed concerns.

17. On October 25, 2016, Orion's North Carolina counsel of record informed the Court that the trustee did not plan to file a response to Plaintiffs' Motion.

18.     Plaintiffs' Motion is now ripe for decision.  Because no response brief was filed, Plaintiffs' Motion "will be considered and decided as an uncontested motion."  BCR 15.11.

## III.  SUMMARY OF THE FACTS

The Court summarizes the material facts for which there is no genuine issue as follows:

19.     Orion offered illegal debt-adjusting services to financially distressed consumers in North Carolina and in other states, initially under its own name and later under the name World Law Group or one of several World Law names.  After beginning its operations under the World Law name in 2010, Orion also began providing its debt-adjusting customers with legal services.  Orion held itself out as a law firm and told its customers that it was providing the services of attorneys.  At no time was Orion a law firm or otherwise authorized to provide legal services to its customers in North Carolina.

20.     On January 14, 2008, Scott formed Swift Rock, a Texas company, for the purpose of offering and engaging in debt-adjusting.  Swift Rock marketed debt-settlement services directly to consumers and enrolled consumers in debt-settlement plans.

21.     Scott formed Orion as a Texas limited liability company on June 2, 2008. Scott is the sole member and manager of Orion.  After Orion was formed, the functions of Swift Rock and Orion were divided.  Swift Rock focused on marketing and enrolling financially distressed consumers with substantial amounts of credit

card debt, representing that Swift Rock was experienced in negotiating substantially reduced settlements with consumers' creditors to reduce or eliminate consumers' debts without bankruptcy.

22. Orion focused on servicing the customers once they were enrolled in the debt-settlement program. Once customers were enrolled by Swift Rock, Orion's employees confirmed the sale, performed any ostensible debt-negotiation services, and handled all further communications with the customers and the customers' creditors.

23. Once consumers were enrolled in the debt-settlement program, Orion instructed customers to stop paying their creditors. Instead, customers were instructed to make monthly payments to their debt-settlement program under the promise that Orion would use the funds to negotiate settlements of the customers' debts for considerably less than the amounts owed. Customers' funds were held by a third party, Global Client Solutions, LLC ("Global").[1]

24. The customers' monthly payments included Orion's fees. Those fees included advance fees for joining the program and recurring monthly fees for Orion's services. After Orion's and Swift Rock's fees were deducted, the amounts that

---

[1] Global is a third-party payment processor that acted as an escrow agent. Global debited the customer's bank account monthly and deposited those funds in a "special purpose account" in the customer's name in a third-party bank. Global disbursed Orion's and Swift Rock's fees from the customer's special-purpose account, pursuant to the customer's debt settlement agreement. If and when a settlement was reached, Global disbursed payment to the customer's creditor. Global was named as a Third-Party Defendant in the case solely for injunctive purposes in order to ensure the cessation of the disbursement of further illegal fees to Defendants. Global is unrelated to the Defendants, and Plaintiffs voluntarily dismissed Global as a Defendant on June 10, 2015.

remained from those monthly payments were accumulated for eventual use in settling the customers' debts. As a result of deducting those advance fees, a customer typically had to participate in the program for two to four years before sufficient funds accumulated to offer to creditors.

25. Swift Rock and Orion operated in this fashion until approximately sometime in 2010.

26. In late 2009, because of abuses by the debt-settlement industry, in a rule-making proceeding, the Federal Trade Commission ("FTC") proposed amendments to the federal Telemarketing Sales Rule ("TSR") that would prohibit debt-relief providers, including debt-settlement companies, from collecting advance fees prior to actually settling consumers' debts. 16 C.F.R. § 310 (2016). The amendments to the TSR became effective on October 27, 2010. See *id.*

27. Seeking a means of continuing their debt-settlement business, and apparently believing that the proposed FTC regulation exempted law firms, during the spring of 2010, Scott met with Haskins in Fort Lauderdale, Florida. Haskins, who is licensed as an attorney in Texas, told Scott that he was the principal of a large international law firm called the World Law Group. In reality, there was no large international law firm headed by Haskins.

28. Orion and Haskins agreed to jointly continue providing Orion's debt settlement services under the World Law name. Orion's Chief Operating Officer David S. Klein executed a Memorandum of Understanding (the "Memo") on behalf of Orion with World Law Group LLP that recited an effective date of July 18, 2010. The

Memo provided that Orion would continue to negotiate and settle debts on behalf of customers, while World Law would purportedly provide Orion's customers with legal services.

29. After reaching an agreement with Haskins, in April 2011, Orion filed an assumed-name certificate in Travis County, Texas, identifying World Law Debt as an assumed name of Orion. Orion, holding itself out as World Law Debt, including on Internet websites, offered to provide legal services to customers. The Defendants' Client Service Agreements ("CSAs") included provisions representing that World Law Debt would provide consumers with a local attorney who would provide legal advice "throughout the representation." (Pls.' Mot. Summ. J. Against Orion Ex. 15 ¶ 5.) The CSAs included this statement:

> The local attorney will review CLIENT'S case files, consult with CLIENT, explain to CLIENT their options if served or threatened with a lawsuit, and assist with filling an answer to any debt collection lawsuit filed against CLIENT. The local attorney will also advise client with regards to state and/or federal debt collection laws.

(Pls.' Mot. Summ. J. Against Orion Ex. 15 ¶ 5.)

30. Orion continued to provide debt-adjusting services to consumers following its agreement with World Law. Defendants' CSAs purported to reflect that the customer was contracting with a World Law entity—variably identified as World Law Debt, World Law Group, or World Law Plan—and that World Law would provide an attorney for the debtor in addition to providing debt-adjusting services. Orion's employees handled all the debt-adjusting services. Orion's employees held themselves out to consumers as paralegals and litigation specialists with the law firm

World Law, World Law Group, and later, World Law South, although there were no such law firms. (*See* Davenport Aff. ¶¶ 7, 11–12.)

31. In many instances, customers who followed Orion's instructions to stop paying their creditors were sued by their creditors for nonpayment. Orion's employees advised customers to forward all legal pleadings and documents to Orion, and represented that World Law attorneys would provide legal assistance to the customers. Even though the CSAs stated that customers would receive the assistance of an attorney licensed in the customer's state, no known North Carolina attorneys actually communicated with Orion's employees or with North Carolina customers to give advice about their lawsuits.

32. Instead, Orion employees received prepared form pleadings from anonymous World Law e-mail addresses such as attorneys22@worldlawdirect.com. Orion employees could not identify who prepared the form pleadings or where they had been prepared. The prepared answers to lawsuits were based on the same document template in almost every instance—only the party's name, the court caption, and information about the customer's account differed. The form answer asserted patently frivolous defenses and claims that had no legal or factual basis, which caused some customers to be sanctioned by courts.[2] Orion also provided customers with prepared form responses to discovery and motions for summary judgment. These documents also made false statements of fact or contained frivolous

---

[2] For example, the "answers" routinely stated that the customer never opened the credit card accounts at issue, even though the customer previously had not disputed that they owed the debts, and in fact had instructed World Law to settle the same debts.

responses. Orion employees instructed customers that the legal documents had been prepared specifically for their case by a World Law local attorney. Orion's employees forwarded these legal documents to customers and advised them to sign the documents as pro se defendants, and instructed the customers on how to serve them on the plaintiff-creditor and file them with local courts. Virtually identical frivolous pleadings were filed in more than 120 cases brought by creditors against World Law's customers in North Carolina courts.

33. Orion's employees also instructed customers to make various assertions and claims in court using scripts provided by Orion. If the hearing was one in which a judgment might be awarded, such as a summary judgment hearing, a person who held himself out as a World Law representative would sometimes contact the customer by e-mail and instruct the customer to demand federal arbitration at the hearing. Customers were not told what arbitration involved or that they would have to pay an arbitration fee. In response, many courts denied consumers' requests for arbitration or imposed deadlines on consumers to initiate arbitration. Other courts allowed the requests.

34. If the court allowed arbitration, Orion employees often submitted an arbitration claim on behalf of the customer to the American Arbitration Association (the "AAA"). All claims submitted by Orion to the AAA were virtually identical. Orion identified Haskins as the customer's representative.

35. Under Defendants' World Law scheme, Orion continued to charge steep advance fees to customers, including to customers in North Carolina. Fees charged

by Orion to North Carolina customers included a $199 initial enrollment fee, a monthly fee of $84.95 designated as an "attorney fee," a "bundled legal service" fee, and a monthly "debt settlement" fee, which was based on the amount of the consumer's enrolled debts. (Am. Compl. Ex. F Schedule A.) Virtually all the fees were collected in advance of any attempt by Orion to settle a customer's debts. (*See* Orion Entity Dep. 300:13–304:3.) On a monthly basis, Global disbursed all these fees to Orion, or at Orion's direction, to third parties that had enrolled the customer, except for $9.45 that Global retained as a monthly bank fee. Orion authorized Global to pay "World Law" $20.00 per month from each enrolled consumer's account as an "attorney administration fee." At Orion's authorization, this $20.00 monthly "attorney administration fee" was disbursed by Global into a bank account in the name of WLD Price Global, Inc., a then-dissolved business corporation solely owned by Haskins. (Pls.' Br. in Opp'n to Def. Scott's Mot. to Dismiss, Ex. 2 Evers Aff. ("Evers Aff.") ¶ 11.)

36. These activities persisted in North Carolina until the Temporary Restraining Order and Preliminary Injunction Order were entered by the superior court. After the Preliminary Injunction Order was entered, Global continued to draft customers' accounts for Orion's fees, but Global held the fees in suspense and did not disburse any fees to Orion or any other third parties, except for Global's bank fee. Orion continued to perform ostensible debt-settlement services to existing customers. Orion continued to provide legal documents to North Carolina customers with instructions for filing the documents in North Carolina courts, sometimes under the

name World Law South,[3] and to initiate arbitration proceedings on behalf of North Carolina customers.

37. Most customers' debts were not settled, and many customers' debt situations were significantly worsened as a result of their participation in Defendants' program. Under the terms of the World Law CSAs, much of the customers' monies were earmarked for Defendants' advance fees. As a result, many customers were unable to accumulate sufficient funds to settle their debts, their debts were not settled, and their creditors went unpaid, which caused many creditors to sue the customer–debtors, and forced some customers into bankruptcy.

38. On August 17, 2015, the federal Consumer Financial Protection Bureau ("CFPB") filed a civil enforcement action against Orion and the remaining Defendants in the U.S. District Court for the Southern District of Florida, alleging that Defendants had engaged in violations of the federal TSR by collecting illegal advance fees from consumers for debt-relief services and engaging in unfair and deceptive practices. *Consumer Fin. Prot. Bureau v. Orion Processing, LLC*, No. 15-23070-Civ-COOKE/TORRES, 2015 U.S. Dist. LEXIS 117051, at *2 (S.D. Fla. Sept. 2, 2015). The CFPB obtained a nationwide injunction prohibiting Defendants from engaging in debt-relief and related legal activities, and the federal court appointed a receiver to assume control over Defendants' enterprise, which was shut down. *Consumer Fin. Prot. Bureau,* 2015 U.S. Dist. LEXIS 117051, at *11–13.

---

[3] Following the entry of the Preliminary Injunction Order, in August 2013, Haskins created Defendant "World Law South, Inc." ("WLS"), a North Carolina corporation. In many instances, Defendants then proceeded to operate under the WLS name in communications with North Carolina customers and customers' creditors.

39.     Since early 2010, at least 1,427 North Carolina consumers have entered into CSAs for debt-relief services that were serviced by Orion through its arrangement with World Law Group. (Evers Aff. Ex. B.) From early 2010 until September 1, 2014, North Carolina customers paid a total of at least $8,549,095.03 into the World Law debt-settlement program. (Evers Aff. ¶ 6.) When Global terminated its business relationship with Defendants effective September 1, 2014, Global issued refunds of Defendants' fees to North Carolina customers for fees that had been withheld from Defendants and retained in customers' special-purpose accounts pursuant to the Preliminary Injunction Order, together with any amounts that had been set aside to pay customers' creditors—leaving a total of at least $3,170,306 in fees that were paid to Defendants that has not been returned to consumers or disbursed to consumers' creditors.

## IV.     ANALYSIS

40.     On a motion for summary judgment brought under Rule 56 of the North Carolina Rules of Civil Procedure, the movant bears the burden of showing that there is no genuine issue of material fact with respect to the essential elements of a claim and that the movant is entitled to judgment as a matter of law. *See Steel Creek Dev. Corp. v. James*, 300 N.C. 631, 636–37, 268 S.E.2d 205, 209 (1980). Once the movant satisfies that burden, the nonmovant then bears the burden "to present a forecast of evidence which shows that a genuine issue of fact exists, or to provide an excuse for not so doing." *Watts v. Cumberland Cty. Hosp. Sys., Inc.*, 75 N.C. App. 1, 6, 330 S.E.2d

242, 247 (1985), *aff'd in part, rev'd in part*, 317 N.C. 110, 343 S.E.2d 879 (1986). The Court must view the evidence in the light most favorable to the nonmovant. *See Coats v. Jones*, 63 N.C. App. 151, 154, 303 S.E.2d 655, 657 (1983).

41. Plaintiffs have satisfied their burden of showing that there is no genuine issue of material fact with respect to the essential elements of their claims. Orion has not presented or countered with a forecast of evidence to show that a genuine issue of fact exists.

42. The State, through its attorney general, is authorized and empowered by chapters 14, 75, and 114 of the North Carolina General Statutes, among other chapters, to bring actions pursuant to its regulatory and police powers to protect consumers and enforce laws regulating activities in or affecting commerce in this State. *See, e.g.*, N.C. Gen. Stat. §§ 75-50 to -56, 114-2(8)(a) (2015).

43. The State Bar is authorized and empowered by chapter 84 of the North Carolina General Statutes to regulate the practice of law in North Carolina. *Id.* § 84-23(a). Because both the State and the State Bar are governmental units or organizations under 11 U.S.C. § 362(b)(4) (2012), Orion's bankruptcy proceeding does not stay this action.

44. The agreement between Orion and Haskin—who together conducted business as World Law Group and later as World Law South—created a joint enterprise. Since the activities of the joint enterprise consisted of illegal activities in North Carolina—debt-adjusting and the unauthorized practice of law—Orion and Haskins conspired to violate North Carolina law. *See McAdams v. Blue*, 3 N.C. App.

169, 173, 164 S.E.2d 490, 494 (1968) ("A conspiracy is generally defined as an agreement between two or more persons to do an unlawful act."). Each conspirator is jointly and severally liable for any resulting harm from the overt act of one of the parties. *Burton v. Dixon*, 259 N.C. 473, 477, 131 S.E.2d 27, 31 (1963).

45.     Section 14-424 prohibits any person from offering, attempting to engage, or engaging in "debt adjusting." N.C. Gen. Stat. § 14-424 (2015). "Debt adjusting" is defined as follows:

> [E]ntering into or making a contract, express or implied, with a particular debtor whereby the debtor agrees to pay a certain amount of money periodically to the person engaged in the debt adjusting business and that person, for consideration, agrees to distribute, or distributes the same among certain specified creditors in accordance with a plan agreed upon. Debt adjusting includes the business or practice of any person who holds himself out as acting or offering or attempting to act for consideration as an intermediary between a debtor and his creditors for the purpose of settling, compounding, or in any way altering the terms of payment of any debt of a debtor, and to that end receives money or other property from the debtor, or on behalf of the debtor, for the payment to, or distribution among, the creditors of the debtor. Debt adjusting also includes the business or practice of debt settlement or foreclosure assistance whereby any person holds himself or herself out as acting for consideration as an intermediary between a debtor and the debtor's creditors for the purpose of reducing, settling, or altering the terms of the payment of any debt of the debtor, whether or not the person distributes the debtor's funds or property among the creditors, and receives a fee or other consideration for reducing, settling, or altering the terms of the payment of the debt in advance of the debt settlement having been completed or in advance of all the services agreed to having been rendered in full.

*Id.* § 14-423(2).

46.     Orion's activities plainly constitute "debt adjusting." North Carolina customer–debtors paid Defendants on a monthly basis for debt-relief services, including debt settlement services, with the understanding that Defendants would

negotiate substantially reduced settlements of customers' debts with their creditors, and that their creditors would be paid out of the monies accumulated in the World Law debt-settlement program. Orion collected substantial fees from customers for those services, with the vast majority of Orion's fees being collected in advance of reaching any settlements with customers' creditors.

47. Pursuant to section 14-425, the offering of debt-adjusting services or the continuation of any debt-adjusting business is an unfair and deceptive practice. *Id.* § 14-425.

48. Orion, doing business under various World Law names, including the names World Law Processing and World Law Debt, and holding itself out as a division of World Law Group, violated section 14-424 by engaging or attempting to engage in debt-adjusting, including by holding itself out as acting as an intermediary between North Carolina consumer debtors and the debtors' creditors for the purpose of reducing, settling, or altering the terms of the payment of debtors' debts, and by collecting fees in advance of the settlement of debtors' debts.

49. Section 84-2.1 of the North Carolina General Statutes states that the practice of law in North Carolina is "defined to be performing any legal service for any other person, firm or corporation, with or without compensation," including "preparing or aiding in the preparation of any petitions or orders in any probate or court proceeding . . . assisting by advice, counsel, or otherwise in any legal work; and to advise or give opinion upon the legal rights of any person, firm or corporation." *Id.* § 84-2.1(a).

50. Section 84-4 provides that "it shall be unlawful for any person or association of persons, except active members of the Bar of the State of North Carolina admitted and licensed to practice as attorneys-at-law, to appear as attorney or counselor at law in any action or proceeding before any judicial body" or "to give legal advice or counsel." *Id.* § 84-4.

51. Section 84-5 prohibits a corporation from engaging in the practice of law, including any advertising or holding out that it can provide attorneys or legal services. *Id.* § 84-5(a).

52. Orion is not a law firm authorized to provide legal services in North Carolina, and is therefore prohibited from engaging in the practice of law in North Carolina. *See id.*

53. The Defendants' agreements with customers makes clear that Defendants, including Orion, as World Law Debt, contracted with customers to provide legal services, including reviewing the customers' files and advising on options with respect to any actual or threatened lawsuits. This is an obvious violation of the prohibition against corporations practicing law under section 84-5.

54. The documents that Orion employees provided to North Carolina customers were legal documents. The documents consisted of answers for filing in lawsuits, responses to discovery requests, and responses to motions for summary judgment.

55. Orion employees gave legal advice to customers, including specific instructions on how to file and serve the prepared pleadings, and what to say to

courts. In virtually all instances, Orion served as the contact point for customers on all legal matters.

56. Orion, doing business as World Law Processing and World Law Debt, in conjunction with World Law Group, violated sections 84-4 and 84-5 of the North Carolina Statutes by (1) representing in communications with North Carolina customers and customers' creditors that it could provide legal services, (2) providing court pleadings and other legal documents to North Carolina customers to represent themselves pro se, and (3) providing legal advice to North Carolina customers on defending lawsuits.

57. Section 75-1.1 prohibits any person from engaging in an unfair or deceptive practice in or affecting commerce. N.C. Gen. Stat. § 75-1.1 (2015). Debt-adjusting is a per se unfair and deceptive trade practice. *See id.* § 14-425.

58. Orion's debt-adjusting activities and provision of legal services to North Carolina consumers are activities "in or affecting commerce" in this State. *Id.* § 75-1.1. Therefore, Orion violated section 75-1.1 because it engaged, offered, and attempted to engage in debt-adjusting. Additionally, Orion violated section 75-1.1 by making false representations to consumers, including:

(1) that World Law Group or World Law was a law firm, and that Orion was a division of that law firm;

(2) that Orion, in conjunction with World Law, would settle North Carolina customers' debts for reduced amounts with their creditors and save customers money, leaving them in better financial situations;

(3) that Orion would provide legal representation, including representation by local North Carolina attorneys;

(4) that pleadings and legal documents that Orion sent to customers had been prepared by local attorneys and were specifically prepared for each customer's legal case;

(5) that state and federal laws required customer funds to be held by an attorney or in an attorney-based trust account; and

(6) that customers' funds would be held by an attorney or placed in an attorney-based trust account.

## V. CONCLUSION

For the reasons expressed above, the Court concludes as follows:

1. Summary judgment is GRANTED in favor of Plaintiffs. Orion Processing, LLC is permanently enjoined from engaging in activities that constitute debt-adjusting and the unauthorized practice of law as set forth in the Judgment and Permanent Injunction issued concurrently with this Order and Opinion.

2. Plaintiffs are entitled to an award of the disgorgement of all amounts paid by North Carolina consumers into Defendants' debt-settlement program that have not previously been refunded or paid to consumers' creditors pursuant to N.C. Gen. Stat. § 75-15.1. However, Plaintiffs shall not seek to collect, execute upon, or otherwise enforce any such award except in connection with any order or distribution authorized by the bankruptcy court in Orion's bankruptcy case or in any related adversary proceeding in Orion's bankruptcy case.

3.      Subject to the final adjudication by the bankruptcy court of the respective rights of Orion bankruptcy estate and Plaintiffs, the Court directs the release of the $300,000 being held in trust by Defendant's counsel, pursuant to the Preliminary Injunction Order, to the State of North Carolina, so long as the bankruptcy court determines that the $300,000 is not the property of the bankruptcy estate, or, alternatively, is determined to be security for North Carolina's claim.  The Court's Order is expressly without prejudicial effect on any rights, claims, arguments, positions, remedies, and defenses of Plaintiffs and the bankruptcy trustee in Orion's bankruptcy case or in any related adversary proceeding.

4.      Orion's knowing, willful, and continued violations of North Carolina law, including its provision of legal services to North Carolina customers even after the entry of the Preliminary Injunction Order, entitle Plaintiffs to an award of civil penalties pursuant to N.C. Gen. Stat. § 75-15.2.   However, Plaintiffs shall not seek to collect, execute upon, or otherwise enforce any such award except in connection with any distribution authorized by the bankruptcy court or in any related adversary proceeding.

IT IS SO ORDERED, this the 20th day of December, 2016.

/s/ James L. Gale
James L. Gale
Chief Business Court Judge