An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1062

Filed 5 November 2025

New Hanover County, No. 23CVS001661-640

RIVERWALK CONDOMINIUMS OF
WILMINGTON UNIT OWNERS'
ASSOCIATION, INC., Plaintiff,

v.

GALLAN HOLDINGS, LLC, Defendant.

Appeal by Defendant from order entered 4 June 2024 by Judge G. Frank Jones in New Hanover County Superior Court. Heard in the Court of Appeals 12 August 2025.

> *Equitas Law Partners, LLP, by Thomas S. Babel and Lieth O. Khatib, for Plaintiff–Appellee.*
>
> *Nelson Mullins Riley & Scarborough, LLP, by Lorin J. Lapidus, G. Gray Wilson, and D. Martin Warf, for Defendant–Appellant.*

MURRY, Judge.

Gallan Holdings, LLC (Defendant) appeals from the trial court's order granting Riverwalk Condominiums of Wilmington Unit Owners' Association, Inc. (Plaintiff) a "preliminary, permanent, and mandatory" injunction. For the reasons below, this Court dismisses Defendant's interlocutory appeal for lack of appellate jurisdiction,

dismisses Defendant's claim regarding the trial court's omission of any security bond payment from the injunction for lack of preservation, and denies Defendant's petition for writ of certiorari (PWC).

## I.    Background

This case arises out of a dispute over deed restrictions on a property located in Wilmington, North Carolina. The Riverwalk Condominiums consist of two buildings containing 28 condo units, a floating dock, and 8 boat slips on the Cape Fear River (Property).

In 2000, River Partners, LLC, owner of the Property, filed the "Declaration of Riverwalk, a Condominium" (Declaration) with the New Hanover County Register of Deeds. The Declaration established restrictions on the Property enforceable by Plaintiff. It also incorporated by reference certain conditions in Permit #149-98 (Permit) issued by the Division of Coastal Management under the Coastal Area Management Act (CAMA). The Permit required "transient docking areas" to "remain open and freely accessible to the public for the life of the proposed development." *See* N.C.G.S. § 113A-118 (2025) (describing CAMA permit requirements). The Declaration specified that its "restrictions and burdens . . . constitute[d] covenants running with the land" and "equitable servitude[s]" that bound all subsequent condo owners.

The Declaration also granted Plaintiff authority to adopt regulations for the

areas of the Property "maintained for [all unit owners'] . . . joint use and enjoyment" and designated the eight boat slips as "Limited Common Elements," allocated for specified condo units' "exclusive use." Exercising this authority, Plaintiff issued the "Rules and Regulations for the Use of . . . Limited Common Elements" (Condo Rules) and the "Dock Rules and Regulations" (Dock Rules). The Condo Rules and Dock Rules prohibit boat owners from storing materials on the docks, constructing "structures" on them, and docking any boat longer than 28 feet from bow to stern. They also require Plaintiff's prior written approval for business-related use of the boat slips and hold condo unit owners responsible for "communicat[ing]" these requirements to their tenants.

Defendant owns three condo units in the Property, including the unit assigned to all eight boat slips. Without Plaintiff's prior approval, Defendant leased the boat slips to two commercial tenants, Wilmington Water Tours, LLC (WWT) and Pickett Investments, LLC (Pickett). WWT operated its business out of the boat slips; Pickett docked an 85-foot yacht among the boat slips and installed dock boxes on them. Plaintiff sent Defendant a letter stating that Pickett's "install[ation]" of "dock boxes" on the boat slips "violat[ed]" the Dock Rules. Defendant nevertheless allowed WWT and Pickett's boats and dock boxes to remain on the boat slips.

On 20 September 2023, Plaintiff filed an amended complaint against Defendant, seeking an injunction requiring Defendant to remove its tenants' boats,

"dock boxes[,] and other improvements," and prohibiting Defendant from leasing the boat slips to third parties. Defendant filed an answer and affirmative defenses in response. Nine days later, Plaintiff moved for partial summary judgment on its injunction claim, to which Defendant responded by moving for summary judgment.

After a hearing, the trial court issued an order on 4 June 2024 granting Plaintiff partial summary judgment on its injunction claim.[1] The injunction required Defendant to abide by the conditions in the Declaration and the Condo Rules, including the Permit "incorporated into the Declaration"; to remove its tenants' boats, materials, and "permanent improvements" from the boat slips; and to refrain from leasing the boat slips or using them other than for "transient" purposes. Defendant timely appealed the trial court's order. Defendant filed a PWC in this Court ten months later.

## II.    **Jurisdictional Analysis**

On appeal, Defendant argues that the trial court erred by granting Plaintiff a permanent injunction (1) before hearing the full case on the merits, and (2) without first making a security-bond determination under North Carolina Rule of Civil

---

[1]    The trial court's order also granted Plaintiff partial summary judgment on its claim for declaratory relief against Defendant. On 5 December 2024, Defendant partially withdrew its appeal "only as it pertains to review of the trial court's partial summary judgment order," leaving "unaffected" its "appeal of the injunction portion" of the order. *See* N.C. R. App. P. 37(e)(1) (allowing a party to withdraw appeal prior to filing a record on appeal). Thus, we limit our review solely to the trial court's grant of a permanent injunction.

Procedure 65. *See* N.C. R. Civ. P. 65(c). For the following reasons, this Court dismisses Defendant's interlocutory appeal for lack of appellate jurisdiction, dismisses Defendant's claim regarding the trial court's omission of any security-bond payment from the injunction for lack of preservation, and denies the PWC.

## A. Interlocutory Appeal

First, Defendant argues that the trial court's order deprives it of a substantial right (1) by "requir[ing] material alterations to permanent structural improvements made to Defendant's real property," and (2) by "adversely and materially [a]ffect[ing] Defendant's right to operate its business." We disagree on both counts.

Under N.C.G.S. §§ 1-277, 7A-27, a party may appeal the interlocutory injunction of a superior or district court if the order affects "a substantial right." N.C.G.S. §§ 1-277(a), 7A-27(b)(3)(a) (2025). Unlike a final judgment, an interlocutory order "does not dispose of the case[ ] but leaves it for [the trial court's] further action . . . to settle and determine the entire controversy." *Veazey v. City of Durham*, 231 N.C. 357, 362 (1950). Ordinarily, Defendant would have no right to appeal an interlocutory order unless an exception applies—here, a potentially substantial right. A substantial-right determination must fulfill a two-part test by "(1) affect[ing] a substantial right and (2) work[ing] injury if not corrected before final judgment." *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 726 (1990). This test "is more easily stated than applied" and typically requires a case-by-case analysis that "consider[s]

the particular facts of th[e] case and the procedural context" of the appealed order. *Waters v. Qualified Personnel, Inc.*, 294 N.C. 200, 208 (1978).

But Defendant has no substantial right to violate restrictive covenants that validly bind its property because the Declaration specifies that its "restrictions and burdens" are "covenants running with the land." Such restrictive covenants are contractual in nature and thus enforceable "to the same extent" as "any other valid contractual relationship." *Sheets v. Dillon*, 221 N.C. 426, 431 (1942) (citing 14 Am. Jur. *Covenants, Conditions, and Restrictions* § 206 (1938)). And "[a]s parties bind themselves so must the court leave them bound." *Tull v. Doctors Bldg., Inc.*, 255 N.C. 23, 41 (1961). With this in mind, we consider each of Defendant's substantial-rights arguments.

### 1. *Permanent Improvements*

Defendant cites *Steel Creek Dev. Corp. v. James*, 300 N.C. 631 (1980), and *Keener v. Arnold*, 161 N.C. App. 634 (2003), to support its claim that removal of its "substantial permanent improvements . . . would alter the property's unique constitution in a manner that damages cannot later sufficiently repair." In *James*, our Supreme Court held that an interlocutory injunction requiring the defendants' removal of twelve concrete anchors from the plaintiffs' submerged land affected the defendants' substantial right. *James*, 300 N.C. at 636. Similarly, in *Keener*, this Court held that an interlocutory injunction requiring the defendants' removal of

"substantial structures," including a bulkhead and a pier, from land of disputed ownership affected the defendants' substantial right. *Keener*, 161 N.C. App. at 636–37.

Here, Defendant's "improvements" to the boat slips were far less "substantial" or "permanent" than those in *James* or *Keener*. The only improvements that Defendant identified were its "maintain[ance of] the boat slips . . . including the dock box and gate access." The injunction requires Defendant to "remove" from the boat slips stored materials and "permanent improvements . . . including, but not limited to, dock boxes." Because above-ground dock boxes are relatively portable containers bolted to a particular dock only for wind and sea resistance, *e.g.*, *Model 725—2XLarge*, Dockbox.com, https://www.dockbox.com/product/model-725-2xlarge/ (last visited Oct. 27, 2025) ("90 lbs."), they are a far less "substantial" and "permanent" improvement to real property than the submerged concrete anchors in *James*, 300 N.C. at 636, or the constructed bulkhead and pier in *Keener*, 161 N.C. App. at 636. Defendant's stored materials do not constitute improvements at all. Thus, the injunction's requirement that Defendant remove the dock boxes and stored materials does not affect a substantial right.

### 2. Business Operations

Defendant further claims that the injunction's "adverse[ ] and material[ ] effect[ ] on [its] right to operate its business" implicates a substantial right like the

injunction in *Tetra Tech Tesoro, Inc. v. JAAAT Tech. Servs., LLC*, 250 N.C. App. 791 (2016). There, this Court held that a preliminary injunction affected the defendant's substantial right by "severely restrict[ing]" the defendant's use of funds to "continue its [business] operations." *Id.* at 799–800. Even after modification, the injunction required the defendant general contractor to hold in escrow all funds from an ongoing construction project, permitting distribution only to the plaintiff subcontractor and certain third parties. *Id.* at 795, 799.

Here, the injunction does not "severely restrict[ ]" Defendant's business operations as a whole. *Id.* at 799; *see Hanna v. Wright*, 253 N.C. App. 413, 415 (2017) ("[W]e have not recognized that an order that does not prevent the business *as a whole* from operating affects a substantial right."). Defendant's owner, Martin Gallan, testified that Defendant is a "real estate holding business" that owns real property in "[m]ultiple" states, with four properties in North Carolina alone. The injunction limits Defendant's activities at only one of the various properties through which it conducts business operations.

Additionally, Defendant cannot claim any right to conduct business operations in violation of the Declaration and the Dock Rules adopted under the Declaration's authority. *See Tull*, 255 N.C. at 41. The injunction requires Defendant to remove from the boat slips "any and all boats . . . including, but not limited to," those owned by WWT and Pickett, and it prohibits Defendant from leasing the boat slips. The Dock

Rules prohibit boat owners from renting boat slips to third parties without Plaintiff's prior approval, which Defendant did not obtain. Thus, this Court holds that Defendant cannot claim a substantial right on either ground.

## B. Bond Determination

Second, Defendant argues that the trial court prejudicially erred by granting the injunction without considering whether Plaintiff must post a security bond under Rule 65. We review *de novo* a trial court's grant of a preliminary injunction. *See Barr-Mullin, Inc. v. Browning*, 108 N.C. App. 590, 594 (1993). Rule 65 disallows any preliminary injunction unless the party seeking one offers a security deposit "in such sum as the judge deems proper[ ] for the payment of such costs and damages" that a "wrongfully enjoined" party may incur. N.C. R. Civ. P. 65(c). This Court has broadly interpreted the phrase "in such sum as the judge deems proper" to afford the trial court the discretion to "dispense with any security requirement whatsoever" where the enjoined party is unlikely to suffer "material damage" and the applicant has sufficient assets to pay wrongful-enjoinment damages. *Keith v. Day*, 60 N.C. App. 559, 562 (1983), *disc'y rev. dism'd as improvidently granted*, 320 N.C. 629 (1987).

Here, the record does not document the trial court's bond determination prior to issuing the injunction. But Defendant did not raise the bond-determination issue at the hearing and thus failed to preserve it for our review. *See* N.C. R. App. P. 10(a)(1) (requiring a party's "timely request, objection, or motion" regarding an issue

at trial to preserve for review). Accordingly, this Court dismisses Defendant's bond-determination argument.

## C. PWC

In the alternative, Defendant asks this Court to grant its PWC on the basis of "merit and . . . probable error . . . committed below." The trial court's injunction requires Defendant to remove boats, improvements, and materials owned by itself or its tenants from the boat slips and prohibits Defendant from leasing the boat slips to third parties in violation of the Declaration. Having carefully considered Defendant's PWC, the briefs, and the record, this Court in its discretion denies the PWC. *See* N.C. R. App. P. 21(a)(1).

## III.    Conclusion

For the reasons discussed above, this Court dismisses Defendant's interlocutory appeal for lack of appellate jurisdiction, dismisses Defendant's claim regarding the trial court's omission of any security-bond payment from the injunction for lack of preservation, and denies Defendant's PWC.

DISMISSED.

Judges ARROWOOD and HAMPSON concur.

Report per Rule 30(e).